IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CLEMENTE PROPERTIES, INC.; 21 IN RIGHT, INC.; ROBERTO CLEMENTE JR.; LUIS ROBERTO CLEMENTE AND ROBERTO ENRIQUE CLEMENTE<br><br>PLAINTIFFS<br><br>V.<br><br>HON. PEDRO R. PIERLUISI URRUTIA, GOVERNOR OF PUERTO RICO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO; THE COMMONWEALTH OF PUERTO RICO; EILEEN M. VÉLEZ VEGA, SECRETARY OF THE PUERTO RICO DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS IN HER OFFICIAL AND INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF THE CONJUGAL LEGAL COMMUNITY COMPOSED BY HER AND JOHN DOE; FRANCISCO PARÉS ALICEA, SECRETARY OF THE DEPARTMENT OF TREASURY IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; RAY J. QUIÑONES VÁZQUEZ, SECRETARY OF THE DEPARTMENT OF SPORTS AND RECREATION IN HIS OFFICIAL AND INDIVIDUAL CAPACITY AND AS REPRESENTATIVE OF THE CONJUGAL LEGAL COMMUNITY COMPOSED BY HIM AND JANE DOE; AND PUERTO RICO CONVENTION DISTRICT AUTHORITY<br><br>DEFENDANTS | Civil No.: 22-1373<br><br>Re:<br><br>28 U.S.C.A. § 2201 and 2202<br>Fed.Rules Civ.Proc. Rule 65<br>42 U.S.C.A. § 1983<br>THE LANHAM ACT<br>TAKINGS CLAUSE<br>DUE PROCESS<br>PR LAW 169-2009<br>PR LAW 139-2011<br>Article 1536 of the Puerto Rico Civil Code |

# AMENDED COMPLAINT

TO THE HONORABLE COURT:

COME NOW the abovenamed Plaintiffs, by and through their undersigned counsel, and respectfully state, allege and pray:

## 1. Nature of the Action, Jurisdiction and Venue

1.1. This is a civil action for declarative relief, injunctive relief and damages, brought pursuant to the Lanham Act also known as Trademark Act, the Takings Clause, the Due Process Clause and Puerto Rico Laws 139-2011, 169-2009 and Article 1536 of the Puerto Rico Civil Code. 28 U.S.C.A. § 2201 and 2202; Fed.Rules Civ.Proc. Rule 65.

1.2. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331 because it arises out of the federal statutes identified in the preceding paragraph and pursuant to 15 U.S.C.A. § 1121.

1.3. This Court also has supplemental jurisdiction over the Puerto Rico claims asserted herein pursuant to 29 USC § 2617 since the federal and the Puerto Rico claims asserted in this Complaint are so interrelated as to form part of the same case and controversy and derive from a common nucleus of operative facts.

1.4. Venue is proper in this District pursuant to 28 USC § 1391 because Plaintiffs' claims arose within the judicial district of Puerto Rico.

1.5. This is an appropriate action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, since there currently exists an actual, justiciable controversy between the Parties.

## 2. The Parties

2.1. Plaintiff, Clemente Properties, Inc., is a corporation organized pursuant to the Laws of Delaware. It is totally own by Roberto Clemente Jr., Luis Roberto Clemente and Roberto Enrique Clemente, sons of Roberto Clemente.

2.2. Plaintiff, 21 In Right, Inc., is a corporation organized pursuant to the Laws of Pennsylvania. It is totally own by Roberto Clemente Jr., Luis Roberto Clemente and Roberto Enrique Clemente, sons of Roberto Clemente.

2.3. Plaintiff, Roberto Clemente Jr., is the son and heir of Roberto Clemente, businessman and a resident of Pennsylvania.

2.4. Plaintiff, Luis Roberto Clemente, is the son and heir of Roberto Clemente, businessman, and a resident of Puerto Rico.

2.5. Plaintiff, Roberto Enrique Clemente, is the son and heir of Roberto Clemente, businessman, and a resident of Puerto Rico.

2.6. Defendant, Hon. Pedro R. Pierluisi Urrutia is the Governor of Puerto Rico being sued herein in his official and individual capacity and as representative of the Commonwealth of Puerto Rico.

2.7. Defendant, the Commonwealth of Puerto Rico is represented herein by Hon. Pedro R. Pierluisi Urrutia, Governor of Puerto Rico.

2.8. Defendant, Eileen M. Vélez Vega is the Secretary of the Puerto Rico Department of Transportation and Public Works being sued herein in his official and individual capacity and as representative of the conjugal legal community composed by her and John Doe.

2.9. Defendant, Francisco Parés Alicea is the Secretary of the Puerto Rico Department of Treasury being sued herein in his official and individual capacity.

2.10. Defendant, Ray J. Quiñones Vázquez is the Secretary of the Puerto Rico Department of Sports and Recreation being sued herein in his official and individual capacity and as representative of the conjugal legal community composed by him and Jane Doe.

2.11. Defendant, Puerto Rico Convention District Authority is a public corporation with independent legal personality and legal capacity.

## 3. Facts

3.1. Roberto Clemente is one of the greatest athletes and humanitarians of the 20th century, recognized not just for the records he set but for the lives he touched with his activism and for achieving excellence without compromising his character.

3.2. Roberto Clemente was a Puerto Rican professional baseball player. He played in Major League Baseball for the Pittsburgh Pirates. He was the first Latin-American player to be enshrined and inducted into the National Baseball Hall of Fame. He was an All-Star many times, Most Valuable Player in 1966, World Series Most Valuable Player in 1971, batting leader in 1961, 1964, 1965, and 1967, a Gold Glove Award winner for 12 consecutive seasons and two times World Series Champion. He had 3,000 regular-season hits in his illustrious career – a plateau that, to date, has only been achieved by 33 players during the over 150 years of professional baseball.

3.3. The Roberto Clemente mark has been in use since 1955 and Clemente Properties, Inc. registered the mark with the United States Patent and Trademark Office ("USPTO") (Registration No. 5,176,650) (Serial number 86048262).

3.4. Clemente Properties, Inc. is the principal registrant of the Roberto Clemente trademark. All rights in relation to the Roberto Clemente mark were legally transferred to Clemente Properties, Inc.

3.5. Regardless of the registration, it is general knowledge that the Roberto Clemente mark, his name and likeness belong to the Clemente family and its companies.

3.6. The Roberto Clemente trademark is a famous mark recognized worldwide.

3.7. The mark is so distinctive that any pictorial depiction of Roberto Clemente is a legal equivalent for trademark purposes.

3.8. Roberto Clemente is not an ordinary money-making brand. It is a symbol of social justice and equality.

3.9. Roberto Clemente died prematurely in 1972 in a plane crash at the age of 38 while in route to deliver aid to earthquake victims in Nicaragua.

3.10. Since then, his widow, the beloved Doña Vera Clemente, dedicated her life to fulfill the social justice dreams of Roberto Clemente and extol him, until her death in 2020.

3.11. His sons, Roberto, Luis Roberto y Roberto Enrique were raised by Doña Vera as leaders and protectors of the Roberto Clemente legacy.

3.12. The worldwide recognition of Roberto Clemente as a sports hero, as a humanitarian and as a social justice symbol is not an accident. It is the result of the life work of his widow, Doña Vera, their sons and their companies.

3.13. The Roberto Clemente Foundation and the Roberto Clemente Museum in Pittsburg are two examples of the work of the Clemente family and their companies, in joint venture with other respectable members of society, to use, promote and exalt the Roberto Clemente mark.

3.14. Also, the Roberto Clemente mark is licensed constantly for all kinds of initiatives, including but not limited to, events, products, awards, art, etc. It is a mark so famous that transcends to all kinds of commercial activities.

3.15. The Roberto Clemente trademark is constantly used by its owners and licensees.

3.16. 21 In Right, Inc. is the corporation with the right to license the Roberto Clemente trademark.

3.17. Roberto Clemente Jr., Luis Roberto Clemente and Roberto Enrique Clemente are the sons of Roberto Clemente, his heirs, the owners of Clemente Properties Inc. and 21 In Right, Inc., and are generally recognized on a personal level, in the public arena and in the business world as such.

3.18. They have the responsibility, invested in them by their parents, to ensure that the Roberto Clemente mark remains an instrument for social justice through sports and other kinds of initiatives. Mission that they achieve personally and through their corporations.

3.19. Also, Plaintiffs retained the services of the leading intellectual property management agency, CMG Worldwide, Inc., who represents famous deceased personalities as their exclusive, worldwide business representative for Clemente Properties, Inc. and 21 in Right, Inc. to monitor and address unauthorized use of the Roberto Clemente mark as well as to license such mark to select companies for high quality merchandise and endorsements. CMG has been very successful in stopping various unauthorized uses and has, or is in the process of securing around 25 companies to use the Roberto Clemente mark.

3.20. CMG Worldwide, Inc. has also secured the rights to the domain name RobertoClemente.com, for Plaintiff, from the unauthorized domain name holder, through the World Intellectual Property Organization Arbitration and Mediation Center on July 25, 2022 in a reported decision. The World Intellectual Property Organization acknowledged that the Plaintiff was the sole and exclusive proprietor of these valuable intellectual property rights.

3.21. Governor Hon. Pedro R. Pierluisi Urrutia, is the highest public official of the Puerto Rico government, the representative of the Commonwealth of Puerto Rico, and has the constitutional duty to implement valid laws. The Governor should act according to the laws and the Constitutions of the United States and Puerto Rico.

3.22. The Governor has a cabinet of government officials selected by him that assist him in implementing valid laws and public policies, and lead the executive branch departments accordingly.

3.23. Eileen M. Vélez Vega is part of the cabinet of Governor Pierluisi and holds the position of Secretary of the Puerto Rico Department of Transportation and Public Works and should act according to the laws and the Constitutions of the United States and Puerto Rico. She is the highest official of the agency and is responsible for its operations.

3.24. Francisco Parés Alicea is the Secretary of the Puerto Rico Department of Treasury should act according to the laws and the Constitutions of the United States and Puerto Rico. He is the highest official of the agency and is responsible for its operations.

3.25. Ray J. Quiñones Vázquez is the Secretary of the Puerto Rico Department of Sports and Recreation should act according to the laws and the Constitutions of the United States and Puerto Rico. He is the highest official of the agency and is responsible for its operations.

3.26. The Puerto Rico Convention District Authority is a public corporation with independent legal personality and legal capacity, responsible for the planning and organization of the Roberto Clemente Sports District, as will be described subsequently. As a public corporation, should act according to the laws and the Constitutions of the United States and Puerto Rico.

3.27. At the beginning of calendar year 2022, pursuant to Joint Resolution No. 16 of August 5, 2021, the Government of Puerto Rico, led by Governor Pierluisi, through the Department of Transportation and Public Works, led by Secretary Vélez, began to impose -mandatory for any driver who acquires a license plate during the calendar year 2022-

the purchase of a commemorative license plate of the fifty (50) years of the "Hit 3,000" by Roberto Clemente.

3.28. The mandatory purchase of the license plate has a charge of twenty-one dollars ($21.00).

3.29. The license plate has an image of Roberto Clemente and includes the name “Clemente” with the number "21", the number "50" the word "anniversary" and the phrase "3000 hits".

3.30. The cost charged to the citizens of Puerto Rico is transferred to the Roberto Clemente Sports District Fund, administered by the Puerto Rico Department of Treasury, for the exclusive use of the Department of Sports and Recreation.

3.31. The Department of Transportation and Public Works, controlled by Secretary Vélez, and the relevant agencies of the Government of Puerto Rico, also carry out an information campaign that allows citizens to learn about the availability of the Roberto Clemente commemorative license plate, its cost and the use for which the funds generated will be destined.

3.32. Any person who wishes to exchange the license plate of their vehicle for the commemorative one of Roberto Clemente must complete an application to that effect, deliver the previous license plate and buy the corresponding Internal Revenue Vouchers worth twenty-one dollars ($21) for the payment of the new license plate.

3.33. Additionally, pursuant to Joint Resolution No. 17 of August 5, 2021, at the beginning of calendar year 2022, the Government of Puerto Rico, led by Governor Pierluisi, through the Department of Transportation and Public Works, led by Secretary

Vélez, began to impose a mandatory charge of five dollars ($5.00) in addition to the regular costs for duties, tariffs and fines, for a commemorative vehicle certificate tag to the fifty (50) years of Roberto Clemente's "Hit 3,000".

3.34. The vehicle certificate tag is yellow, has the figure of Roberto Clemente with the name “Clemente”, the number “21”, the number “50” and phrase “3000 HITS” alluding to the fifty (50) years of the hit 3,000.

3.35. Citizens are also allowed to make a donation in the amount of five dollars ($5.00), ten dollars ($10.00), twenty dollars ($20.00) or any other desired amount.

3.36. The cost of the vehicle certificate tag and the donations made by the citizens are destined in their entirety to the Roberto Clemente Sports District Fund, administered by the Department of Treasury for the exclusive use of the Department of Sports and Recreation.

3.37. All providers of payment collection services of vehicle certificate tags are required to notify the citizen that he will be able to make the donation at the time of making the payment.

3.38. The Secretary of the Department of Treasury must submit an annual report to the Legislative Assembly detailing the monthly collections and deposits related to the Roberto Sports District Fund that are achieved, which will be sent to the Legislative Assembly on or before January 31, 2023.

3.39. In addition, the document of permit for motor vehicles, known as the vehicle license, issued by the Department of Transportation and Public Works includes a reference to the Roberto Clemente Fund (“Fondo Roberto Clemente”) next to the five-

dollar ($5.00) charge, implying that the charge goes to the Roberto Clemente Fund. It is unknown what the "Roberto Clemente Fund" is. This constitutes false advertising because it implies that the funds would go to the Plaintiffs, owners of the Roberto Clemente mark. It is also a use of the mark.

3.40. The Government has informed publicly that it expects to obtain $15,000,000.00 from these endeavors in year 2022.

3.41. None of the above was authorized by the Plaintiffs. Nor are the Plaintiffs involved in any way with these actions of the Defendants.

3.42. However, because it is common knowledge that the Plaintiffs are the owners of the Roberto Clemente mark, his right of publicity, his likeness and the legacy it represents, the People of Puerto Rico necessarily inferred that the Plaintiffs are recipients of some economic benefit from the scheme that was devised by the Puerto Rico Legislative Assembly and implemented by the Defendants.

3.43. This necessary inference was produced by the actions of the Governor of Puerto Rico and the Secretary of the Department of Transportation and Public Works and the rest of the Defendants in using the Roberto Clemente trademark as a subterfuge to collect money from the People.

3.44. The contempt that flooded the People of Puerto Rico because of the previously described scheme did not take long and transcended our borders.

3.45. Because of the use of the mark Roberto Clemente to obtain monies from the People of Puerto Rico, the Plaintiffs suffered innumerable attacks and disdains in the televised, written and on-line press, in social networks, in events, and during every day activities.

3.46. The People righteously rejected the imposition of a charge for the use of the Roberto Clemente mark and likeness in the license plates and vehicle certification tags, in times when our economy is suffering and the cost of living in Puerto Rico increases every day.

3.47. The Roberto Clemente mark and the Plaintiffs were perceived as additional blameworthy actors for the growing impoverishment of the People of Puerto Rico, and as collectors of monies from the People.

3.48. The Roberto Clemente mark, his right of publicity and likeness, and the trademarks, names and likeness of his sons and the other Plaintiffs are intertwined. Any damage, tarnishment and unlawful use of the mark, names, right of publicity and likeness of one affects all the others.

3.49. The Defendants acted willfully, intentionally and fully aware about the mark misappropriation.

3.50. Before proposed Join Resolution RCC0083, which was eventually enacted as Joint Resolution No. 16, Plaintiffs had already authorized Ciudad Deportiva Roberto Clemente to use the trademark, name and likeness of Roberto Clemente for vehicles' license plates. Cuidad Deportiva Roberto Clemente planned to raise funds by the issuing of commemorative license plates to be available to the public in exchange of a voluntary donation of $2.10, not mandatory. The aforementioned was informed to Governor Pierluisi in February 2021, through a letter. RCC0083 followed and was filed on March 10, 2021, less than a month later.

3.51. Through the enactment and implementation of Joint Resolution No. 16, Defendants incurred in an unauthorized use of the trademark, name and likeness of

Roberto Clemente in an identical product that the one that was going to be sponsored by the trademark owners. They imitated the product and the charge reference to the number 21 that is part of the trademark by necessary association. But the actual charge is mandatory and ten times higher.

3.52. Also, before Governor Pierluisi signed into law Joint Resolutions No. 16 and No. 17, he was specifically informed by Luis Roberto Clemente on August 4, 2021, that the name Roberto Clemente and its image was a registered trademark and its use required prior authorization and that they had not received communication or design of the proposal license plate or tag for approval.

3.53. On August 4, 2021, Luis Roberto Clemente received an email from *Fortaleza* (office of the Governor), particularly from the Assistant Chief of Staff of the Governor, with copies of the proposed Join Resolutions RCC0083 and 84 (which were eventually enacted as Joint Resolutions No. 16 and No. 17) asking for opinions regarding the proposed legislations and inviting him to the signing ceremony. Also, he asked for all the information available about the situations and problems confronted with the Government of Puerto Rico to channel concerns and coordinate a meeting with the Governor.

3.54. In response, Luis Roberto Clemente informed Governor Pierluisi through an email to the Assistant Chief of Staff of the Governor, that the name Roberto Clemente and its image was a registered trademark and its use required prior authorization and that they had not received communication or design of the proposal license plate or tag for approval. He also attached the letter sent to Governor Pierluisi in February, 2021 regarding Ciudad Deportiva Roberto Clemente's commemorative license plates, among other issues.

3.55. Therefore, Governor Pierluisi signed into law Joint Resolutions No. 16 and No. 17 knowing they constituted an unauthorized use of the trademark, name and likeness of Roberto Clemente, and were unconstitutional.

3.56. Regardless of the aforementioned, it is common knowledge that the Plaintiffs are the owners of the Roberto Clemente mark, his right to publicity and likeness.

3.57. A search in the United States Patent and Trademark Office shows that Roberto Clemente is a registered trademark owned by Clemente Properties, Inc.

3.58. Therefore, Defendants, knew and/or should have known that Joint Resolutions No. 16 and No. 17 constituted an unauthorized use of the trademark, name and likeness of Roberto Clemente, and the implementation was unconstitutional.

3.59. More importantly, as a matter of law, registration of a mark on the principal register shall be constructive notice of the registrant's claim of ownership. 15 U.S.C.A. § 1072.

3.60. Therefore, as a matter of law, Defendants were notified of the ownership of the mark as well as of the exclusive right to use the mark nationwide. 15 U.S.C.A. § 1057.

3.61. Additionally, Plaintiff Luis Roberto Clemente made several public appearances, sent letters and held meetings with the executive branch explaining the ownership of the trademark, the misappropriation and the unauthorized use.

3.62. Also, in March 30, 2022, notification was served to Defendants through the Secretary of Justice regarding the infringement of the Roberto Clemente trademark and the lack of authorization for its use, among other issues.

3.63. But the Defendants intentionally, willfully and knowingly have continued with the misappropriation, unauthorized use and infringement of the trademark, right to publicity and likeness.

3.64. Secretary Vélez issued written comments to the legislature, previous to the approval of Joint Resolution No. 16, in which she favored the approval as long as it was amended to make the purchase of the commemorative tablet of Roberto Clemente mandatory for all license plates purchased during 2022. Therefore, she was directly responsible for the monies collected through the unauthorized use of the Roberto Clemente trademark, name and likeness in license plates.

3.65. Moreover, Secretary Vélez, was in charge of choosing and making the design, size, colors, composition and other physical details of the license plate and the design, size, composition and other physical details of the vehicle certificate tags. She did not procure authorization from Plaintiffs for the design, size, colors, composition and other physical details of the license plate and the vehicle certificate tags. Therefore, she was directly responsible for the unauthorized use of the Roberto Clemente trademark, name and likeness in license plates and the vehicle certificate tags.

3.66. Secretary Vélez indicated in an interview televised on January 17, 2022, that the monies collected were destined to the Roberto Clemente Foundation. Also she responded in the affirmative when inquired if the charge to restauration of Ciudad Deportiva Roberto Clemente was mandatory.

3.67. Those assertions are contrary to the texts of Joint Resolutions No. 16 and No. 17, that clearly state that the monies are destined to the Roberto Clemente Sports District Fund. Therefore, Secretary Vélez knew that they were incorrect.

3.68. Those incorrect statements cause contempt to the People of Puerto Rico and the Plaintiffs suffered innumerable attacks and disdains in the televised, written and on-line press, in social networks, in events, and during every day activities.

3.69. After Joint Resolutions No. 16 and 17, on July 20, 2022, Law 67-2022 was enacted to create the Roberto Clemente Sports District.

3.70. According to the preceding allegations, this law was also enacted knowing it constituted an unauthorized use of the trademark, name and likeness of Roberto Clemente, and was unconstitutional. By then, even written notification had been served to Defendants through the Secretary of Justice regarding the infringement of the Roberto Clemente trademark and the lack of authorization for its use.

3.71. Law 67-2022 declares the Public Policy of the Commonwealth of Puerto Rico to fully develop the Roberto Clemente Sports District. It transfers to the Commonwealth of Puerto Rico of all the land donated to the entity Ciudad Deportiva Roberto Clemente Inc. In the lands, the Roberto Clemente Sports District will be developed as a sports and recreational facility for the enjoyment of Puerto Ricans and sports tourism. The Puerto Rico Convention District Authority will be responsible for the planning and organization of the Roberto Clemente Sports District, which includes the development, reconstruction and construction of facilities for its proper functioning.

3.72. Law 67-2022 allows the lease and sub-lease of the land, as well as the granting of the surface right over the facilities, buildings and structures of the Roberto

Clemente Sports District to third natural or legal persons. The Department of Sports and Recreation may grant such leases to natural or legal persons, whether or not engaged in sport, whether for pecuniary purposes or not, through adequate consideration and funds may also be obtained by fixing propaganda and advertisements in such facilities. Any payment received by the Department for leases, surface rights and any other charge or lien that is constituted will be used exclusively for the development and maintenance of the areas and facilities. The use of the leased land or facilities, buildings or structures must be for purposes and/or complementary to the development of sports facilities within the sports district.

3.73. Law 67-2022 also creates in the Department of Treasury, the Roberto Clemente Sports District Fund for the exclusive use of the Secretary of the Department of Sports and Recreation for everything related to the operation, administration and conservation of the Roberto Clemente Sports District. The Fund will also be nourished from time to time with contributions from the Federal Government for which it qualifies; contributions and investments from private or public, local, national or international persons and entities; and contributions from the Legislative Assembly. Disbursements from the Fund shall be made in accordance with the law and the regulations and budgets approved by the Department of Sports ad Recreation. The remainder of the funds that as of June 30 of each year has not been used and obligated, will be reprogrammed in the same Fund of the Roberto Clemente Sports District for the next fiscal year, in a way that guarantees the use of the funds collected specifically for this purpose and fulfills the

intention of the citizen when making the payment[1] and / or additional donation of the vehicle certificate tag and license plate commemorating the fifty (50) years of Roberto Clemente Walker's "Hit 3,000" for the year 2022.

3.74. Also, Law 67-2022 establishes that annually, the Department of Sports and Recreation will allocate to the Puerto Rico Convention District Authority the amount of one hundred and fifty thousand dollars ($150,000.00) from the Roberto Clemente Sports District Fund, for the planning and organization of the facilities.

3.75. Law 67-2022 enables the Puerto Rico Convention District Authority to enter into contracts and agreements, including, but not limited to sales contracts, leases, joint ventures and partnerships, as it deems necessary to induce third parties to develop, improve, operate and manage the private plots within the District in accordance with any master plan, design criteria and conditions and restrictions adopted and imposed by the Authority. Likewise, the Authority may award contracts to use, for the benefit of the rehabilitation, development, construction or maintenance of facilities in the Roberto Clemente Sports District, and disburse, in accordance with the terms and conditions established in such contracts, all or part of the funds that are allocated by the Legislative Assembly to the Authority for those purposes, regardless of whether or not such facilities are within the District. Likewise, the Authority will be responsible for the planning and organization of the District. It is also provided that the Roberto Clemente Sports District will be an improvement project.

[1] This is a misleading language because the government unilaterally charges for the vehicle certificate tag and decides the destiny of the collected funds.

3.76. Law 67-2022 also gives the Department of Sports and Recreation the ownership, as well as the operation, administration and conservation of the sports and recreational facilities of the Roberto Clemente Sports District. In addition, it may award contracts to use, for the benefit of the rehabilitation, development, construction, maintenance or administration of facilities in the Roberto Clemente Sports District, and disburse, in accordance with the terms and conditions established in such contracts, all or part of the funds that are allocated by the Legislative Assembly to the Department of Sports and Recreation for those purposes.

3.77. All this, illegally using the Roberto Clemente mark.

3.78. The use of the Roberto Clemente mark as a distinctive and famous mark regarding sports and social justice is the pilar of such an ambitious project. Without it, the possibility of development, private investment and general success is miniscule.

3.79. It is hard to imagine a more appalling use of the Roberto Clemente mark.

3.80. It is a generally known fact that Roberto Clemente himself created Ciudad Deportiva with the purpose of achieving his dream of a sports facility for the youth in Puerto Rico. Doña Vera was also part of the endeavor of the creation Ciudad Deportiva Roberto Clemente, along with Att. Efrén Bernier.

3.81. The governmental scheme described herein, uses the Roberto Clemente mark to create the necessary wealth to deprive Ciudad Deportiva Roberto Clemente, Inc. of its property and develop it, also using his mark.

3.82. The Roberto Clemente mark is being used as a source of funds destined to destroy his dream and his creation: Ciudad Deportiva.

3.83. The mark cannot be used for those purposes.

3.84. Law 67-2022 Statement of Motives states that the Sports District is being created to honor the memory of our Roberto Clemente, carrying out his vision of building a Sports City for the benefit of our young people and future generations. The law expressly describes the Sports District as the vision of Roberto Clemente of building a Sports City to communicate to the People some kind of tacit endorsement of Roberto Clemente to this project.

3.85. But the Defendants are fully aware that the Plaintiffs, who are the ones with the right to use the Roberto Clemente mark and name to endorse the project, are totally opposed to it for the reasons included herein.

3.86. Also, the statement is false advertising. A Sports District created to deprive Ciudad Deportiva -the creation of Roberto Clemente himself- of its property and to just copy its concept, is not the vision of Roberto Clemente. It is a misappropriation of his vision and his creation.

3.87. It bears to point out that Law 67-2022 allows the Puerto Rico Convention District Authority to enter into commercial endeavors that the government proscribed for Ciudad Deportiva Roberto Clemente, Inc. impeding its development. And the inability to develop Ciudad Deportiva created by the government restrictions is paradoxically used to justify the aforementioned scheme.

3.88. Law 67-2022 Statement of Motives states that Ciudad Deportiva Roberto Clemente, Inc., had reported that it had a work plan to achieve the reopening of the facilities and make them available again for the development of sports and physical

activity in Puerto Rico. Then imputes Ciudad Deportiva Roberto Clemente, Inc. of allowing its facilities to be in deplorable conditions, not been fully developed, in a serious state of deterioration and abandonment, useless, in a state of inactivity and a waste of the potential. Given that it is a generally known fact that Roberto Clemente himself created Ciudad Deportiva, and it constitutes one of the most distinctive projects of the mark, this is a bashing of the Roberto Clemente mark.

3.89. And is a misleading statement because Ciudad Deportiva Roberto Clemente, Inc. operated those facilities for years in benefit of the People of Puerto Rico, until the government stopped any funding and blocked the development of the facilities with private funding. When presented with the work plan to achieve the reopening of the facilities with private investment, the public officials that sit in Cuidad Deportiva's board of directors, blocked the initiative through a veto by omission to vote, as permitted by Puerto Rico Law 16-2014.

3.90. Ciudad Deportiva Roberto Clemente is one of the most valuable and recognizable endeavors backed by the Roberto Clemente mark. Given its holistic nature, it constitutes a product, good and service of the mark.

3.91. The use of the Roberto Clemente mark to name a Sports District that is an imitation of Ciudad Deportiva Roberto Clemente is proscribed.

3.92. Even the reference to the Roberto Clemente Sports District constitutes an illicit and unauthorized appropriation of the idea and concept created by, and belonging to the Plaintiffs that has been conceptualized by them as a continuation and expansion

of Ciudad Deportiva Roberto Clemente. This is also proscribed use of the mark because clashes with its future projects.

3.93. Secretary Quiñones endorsed H.R. 489, which was enacted as Law 67-2022, and indicated that envisions its development as the most advanced sports training center, as well as a source of jobs and tourist attraction for those who enjoy sports tourism.

3.94. Secretary Quiñones is in the particular position of being one of the members of the Board of Directors of Ciudad Deportiva Roberto Clemente and therefore has firsthand knowledge of how Ciudad Deportiva Roberto Clemente is one of the most valuable and recognizable endeavors backed by the Roberto Clemente trademark.

3.95. Therefore, Secretary Quiñones is directly responsible for the creation of the Roberto Clemente Sports District which is an unauthorized use of the Roberto Clemente trademark and name, and is an imitation of Ciudad Deportiva Roberto Clemente which is one of the most valuable and recognizable endeavors backed by the Roberto Clemente trademark, making the infringement even more blatant.

3.96. The Puerto Rico Convention District Authority also endorsed H.R. 489 and indicated that it was in a unique position for the development of the Sports District, which goes hand in hand with the Convention District, as it is an opportunity to allow them to be the entity that develops the administration of the projects carried out in the Sports District. Recommended that the Authority be responsible for the planning and organization of the Sports District, maximizing its potential.

3.97. Therefore, Puerto Rico Convention District Authority is directly responsible for the creation and the further development and administration of the Roberto Clemente

Sports District which is an unauthorized use of the Roberto Clemente trademark and name, and is an imitation of Ciudad Deportiva Roberto Clemente which is one of the most valuable and recognizable endeavors backed by the Roberto Clemente trademark, making the infringement even more blatant.

3.98. All this caused a public clash between the Government, the Defendants and the Plaintiffs.

3.99. The Roberto Clemente trademark is perceived not only as a subterfuge to collect money from the People in times of need, but also as the center of controversy with the Government, which is a fatal trait for business.

3.100. The Roberto Clemente mark has been tarnished by the Government and the Defendants' expressions and actions.

3.101. The Roberto Clemente trademark, and the trademark of Plaintiffs and his sons as individual businessmen, are perceived as unstable and rejected by the Government of Puerto Rico, the place of birth of Roberto Clemente.

3.102. The Roberto Clemente trademark, his right to publicity and likeness, the legacy it represents and the trademarks, names and likeness of his sons as individual businessmen and representatives of the mark are severally damaged by the actions of the Defendants.

3.103. The actions of the Defendants have caused Plaintiffs losses of business opportunities and revenues.

3.104. The actions of the Defendants constitute a gross misappropriation, discredit dilution by blurring and by tarnishment and use in multiple ways of the mark of Roberto

Clemente, his right to publicity and likeness in an illegal, negligent, culpable, willful and unauthorized manner. They also tarnished the Plaintiffs' trademarks, persons, names and their own likeness.

3.105. Defendants acted willfully, illegally, culpably and negligently and failed in their duties.

3.106. Such actions constitute a violation of the rights of the Plaintiffs and constitute unlawful, willful, culpable and negligent actions against them.

3.107. The Defendant's actions constitute a violation of the rights held by the Plaintiffs over the Roberto Clemente trademark, right of publicity and likeness, including compensation for the use of the trademark, and have lacerated, discredited, diluted and tarnish the trademark, detracting from its value and prestige.

3.108. Defendant's actions also constitute a violation of the Plaintiffs' right to their own marks, persons, names and likenesses, detracting from the value that such conditions have in the business world, limiting the Plaintiffs' ability to do business, and limiting the ability of Plaintiffs natural persons to do business and generate income as sons of the great Roberto Clemente and ultimate representatives and protectors of his legacy.

3.109. In addition, the actions of the Defendants have caused serious personal and moral injury, and in the private lives of the Plaintiffs, sons of Roberto Clemente, by being the object of general contempt without having had anything to do with the actions of the Defendants and by seeing how their father's name has been used for such an unfortunate

scheme of the Government and Defendants to obtain money from the People, which is totally contrary to what Roberto Clemente represents.

3.110. According to the Government public representations, the revenue for the use of the Roberto Clemente trademark in license plates and vehicle certificate tags is $15,000,000.00.

3.111. On the other hand, the revenues to be perceived by the use of the Roberto Clemente trademark in the enormous project of the Roberto Clemente Sports District as described in Law 67-2022, are immeasurable. And only a trademark as respected and recognized not only in sports, but worldwide, as Roberto Clemente allows such an ambitious project.

3.112. Nonetheless, Defendants are prevented from using the Roberto Clemente mark.

3.113. The governmental scheme to misappropriate the Roberto Clemente trademark and also the products, goods and services of the mark must stop.

## 4. Causes of action

4.1. Plaintiffs incorporate each of the preceding allegations into this section and allegations in this section apply to all causes of action.

### A. 42 U.S.C.A. § 1983 and Ex parte Young

4.2. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C.A. § 1983.

4.3. The doctrine of Ex parte Young, 209 U.S. 123 (1908), provides for injunctive relieve against government officials to cease an ongoing violation of federal law. Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002).

4.4. The preceding legal dispositions in conjunction with the following ones provide Plaintiffs the right to remedies of declaratory and injunctive relief, and damages.

**B. Injunctive relief pursuant to Lanham Act**

4.5. Plaintiff incorporates each of the preceding factual allegations into this paragraph.

4.6. Pursuant to the Lanham Act, any person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with

which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant. 15 U.S.C.A. § 1114.

4.7. An injunction, according to the principles of equity and upon such terms as the court may deem reasonable, shall be granted to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office. 5 U.S.C.A. § 1116.

4.8. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation of any right of the registrant of a mark registered in the Patent and Trademark Office. 15 U.S.C.A. § 1116.

4.9. Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C.A. § 1125 (a).

4.10. 15 U.S.C.A. § 1125 (a) of the Lanham Act is the federal equivalent protection of the right of publicity. ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 924 (6th Cir. 2003).

4.11. Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, **regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury**. 15 U.S.C.A. § 1125 (c).

4.12. "[W]hen […] marks are 'legal equivalents' […] they create the same, continuing commercial impression". Hana Fin., Inc. v. Hana Bank, 574 U.S. 418, 420 (2015).

4.13. The doctrine of legal equivalents recognizes that "a word mark can infringe a picture mark if the word mark evokes the picture mark, and a picture mark can infringe a word mark where the picture is a depiction of the word". Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 925 F. Supp. 2d 1067, 1077 (C.D. Cal. 2012).

4.14. A pictorial depiction can be the legal equivalent of a word mark. Legal equivalents are likely to impress the same mental image. A design mark may be found to be confusingly similar to a word mark consisting of the design's literal equivalent. *See* Trademark Manual of Examining Procedure (TMEP), United States Patent and Trademark Office, July, 2022, section 1207.01(c)(i) Legal Equivalents – Comparison of Words and Their Equivalent Designs.

4.15. According to the facts stated in the previous sections Defendants illegally, culpably negligently, intentionally, knowingly and willfully used, are using and pretend to

continue using the Roberto Clemente mark, name and likeness in contravention to the aforementioned legal provisions.

4.16. Plaintiffs are entitled injunctive relief proscribing the use of the mark.

**C. Damages pursuant to Lanham Act**

4.17. When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under 15 U.S.C.A. § 1125(a), or a willful violation under 15 U.S.C.A. § 1125(c), shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is inadequate the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. The court in exceptional cases may award reasonable attorney fees to the prevailing party. 15 U.S.C.A. § 1117.

4.18. As aforementioned, the owner of a famous mark is entitled to these remedies. 15 U.S.C.A. § 1125(c).

4.19. In a case involving use of a counterfeit mark or designation, that is registered on the principal register in the United States Patent and Trademark Office, whether or not the person against whom relief is sought knew such mark was so registered (15 U.S.C.A. § 1116), the court shall enter judgment for three times such

profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods or services. In such a case, the court may award prejudgment interest on such amount at an annual interest rate, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate. The plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. 15 U.S.C.A. § 1117.

4.20. According to the facts stated in the previous sections, Defendants illegally, culpably, negligently, intentionally, knowingly and willfully used, are using and pretend to continue using the Roberto Clemente mark, name and likeness in contravention to the aforementioned legal provisions.

4.21. Plaintiffs are entitled to recover damages from Defendants as described in the previous sections.

4.22. Congress expressly provided for the Lanham Act to apply to all governmental entities in the Unites States in the vastest sense, including Federal, State

and Territorial government. And the abrogation of sovereign immunity by the United States expressly includes and embraces all territory which is under its jurisdiction and control. 15 U.S.C.A. § 1127.

4.23. The Commonwealth of Puerto Rico must comply with Congress express mandate and therefore is herein liable for damages to Plaintiffs.

4.24. According to the facts stated in the previous sections, Defendants in their individual capacities and the Puerto Rico Convention District Authority acting under color of state law, illegally, culpably, negligently, intentionally, knowingly and willfully, used, are using and pretend to continue using the Roberto Clemente mark, name and likeness in contravention to the aforementioned legal provisions.

4.25. Defendants, in their individual capacities and the Puerto Rico Convention District Authority, are compelled to redress the damages for violations of rights of Plaintiffs.

**D. Taking**

4.26. "[N]or shall private property be taken for public use, without just compensation". U.S. Const. Amendment V. "Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law." Puerto Rico Const. Art. II, § 9.

4.27. "[T]he 'Just Compensation Clause,' the final Clause of the Fifth Amendment provides: '... nor shall private property be taken for public use without just compensation.'

It applies to the States as well as the Federal Government." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 307 (2002).

4.28. In the context of the Fifth Amendment of the Constitution, property is "the individual's 'interest' in the thing in question." United States v. Gen. Motors Corp., 323 U.S. 373, 377–78, 65 S. Ct. 357, 359, 89 L. Ed. 311 (1945). "[T]he term 'property' in the Taking Clause […] denote the […] right to possess, use and dispose of it." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003 (1984).

4.29. "The Takings Clause [..] protects 'private property' without any distinction between different types." Horne v. Dep't of Agric., 576 U.S. 350, 358 (2015).

4.30. "[I]ntangible property rights are deserving of the protection of the Taking Clause". Monsanto Co., 467 U.S. 986, 1003, 104 S. Ct. 2862, 2873, 81 L. Ed. 2d 815 (1984); *see also* Monongahela Nav. Co. v. U.S., 148 U.S. 312, 343 (1893) ("just compensation requires payment, not merely of the value of the tangible property itself, but also of that of the franchise of which he is deprived").

4.31. In Puerto Rico trademarks are recognized as property and as the main asset of a business. Law 169-2009, Statement of Motives.

4.32. Also, according to the Laws of Puerto Rico and jurisprudence, the right of likeness is a property right and is freely transferable by any legal means. 32 L.P.R.A. § 3154; Vigoreaux Lorenzana v. Quizno's, 173 D.P.R. 254 (2008).

4.33. When the government takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the owner. "[C]ompensation is mandated […] even though that use is temporary." Tahoe-Sierra, 535 U.S. 302, 322.

"[T]emporary takings […] are not different in kind from permanent takings, for which the Constitution clearly requires compensation." First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal., 482 U.S. 304, 318 (1987).

4.34. Invalidation of the statute that produces the taking, "though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." First Eng. Evangelical Lutheran Church of Glendale, 482 U.S. 304, 319.

4.35. "The general rule has been that the Government pays current market value for property taken". United States v. Commodities Trading Corp., 339 U.S. 121, 130 (1950).

4.36. According to the previously alleged facts, Defendants knowingly, intentionally and in bad faith misappropriated and used a trademark and likeness belonging to Plaintiffs for the purpose of obtaining the monies of the People of Puerto Rico.

4.37. The aforementioned conduct of Defendants constitutes a taking in the context of the Fifth Amendment U.S. Const. and Puerto Rico Const. Art. II, § 9, that requires just compensation to Plaintiffs equal to the market value of the use of the trademark.

4.38. The Roberto Clemente trademark is generally licensed for a compensation equal to twenty-one percent (21%) of the revenues obtained in analog commercial initiatives for which the trademark is used.

4.39. According to the government public representations, the revenue for the use of the Roberto Clemente trademark and likeness in license plates and vehicle certificate tags for calendar year 2022 is $15,000,000.00.

4.40. Consequently, Plaintiffs are entitled to a just compensation of $3,150,000.00.

4.41. Injunctive relief is due to enjoin Defendants taking by using the Roberto Clemente mark and likeness pursuant to Puerto Rico Law 67-2022, without just compensation.

4.42. Defendants in their individual capacity and the Puerto Rico Convention District Authority, are compelled to redress the damages for the violation of the Plaintiffs' right to not be deprived of property without just compensation.

**E. Due Process**

4.43. No person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amends. V and XIV, Puerto Rico Const. Art. II, § 7.

4.44. According to the previous allegations, Defendants illegally, culpably negligently, intentionally, knowingly and willfully used, are using and pretend to continue using Plaintiffs property, the Roberto Clemente mark, without due process of law.

4.45. The substantive due process guarantee protects against government power arbitrarily and oppressively exercised and limits what the government may do in its legislative and executive capacities. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

4.46. Defendants' actions also constitute a substantive due process violation, because regardless of the process, their actions are invalid and unconstitutional.

4.47. A governmental scheme designed to misappropriate a trademark and also the products, goods and services of the mark shocks the conscience and must stop.

4.48. Accordingly, injunctive relief is due to proscribe the use of Roberto Clemente mark, name and likeness pursuant to Puerto Rico Joint Resolutions No. 16 and 17 of 2021 and Puerto Rico Law 67-202.

4.49. Defendants are compelled to redress the damages for the violation of the right to due process of Plaintiffs.

**F. Puerto Rico Laws**

4.50. Puerto Rico Trademark Law, Law 169-2009, provides that any person who, without the consent of the principal registrant or owner of a mark, reproduces, forges, copies, imitates, uses or attempts to use any mark identical or similar to a mark registered under this chapter, or used in commerce in Puerto Rico before being used by such person, which is likely to cause confusion or deceive as to the origin of the goods or services or as to sponsorship or association, shall be held liable in civil action and the registrant or mark owner may file a lawsuit against such person and request an injunction. 10 L.P.R.A. § 223w.

4.51. Additionally, any person who, without the consent of the owner of a famous mark uses such mark or a term that is substantially similar thereto in commerce in Puerto Rico, shall be subject to an injunction if the use of such famous mark or substantially

similar term is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, even when the goods or services are different, or there is no likelihood of confusion between such marks, or there is no financial injury. 10 L.P.R.A. § 223y.

4.52. Puerto Rico Trademark Law also provides that any person who, without the consent of the principal registrant or owner of a mark, reproduces, forges, copies, imitates, uses or attempts to use any mark identical or similar to a mark registered under this chapter, or used in commerce in Puerto Rico before being used by such person, which is likely to cause confusion or deceive as to the origin of the goods or services or as to sponsorship or association, shall be held liable in civil action for damages. The court shall fix the amount of the damages, taking the following elements as basis: the gross profit that the mark infringing party has made by using the said mark; the amount of earnings that the plaintiff has failed to receive as a result of the actions of the defendant; the diminishing returns that the actions of the defendant have caused the plaintiff; and any other factor that, in the judgment of the court, adequately quantifies the damages. The court may fix the amount of damages in an amount not to exceed three times the profit of the defendant and/or the loss of the plaintiff when the court finds that the violation was intentional or in bad faith. The principal registrant may choose to request that the court rule for statutory damages that may be fixed in an amount of not less than seven hundred fifty dollars ($750) or more than thirty thousand dollars ($30,000) per violation. In the event that the violation was intentional, the court, may increase the amount of statutory damages to a sum not greater than one hundred fifty thousand dollars ($150,000) per violation. If the case is settled in favor of the principal registrant, the court

shall always fix the amount of the costs, fees and expenses of the lawsuit in favor of the principal registrant. 10 L.P.R.A. § 223w.

4.53. The same remedies apply to an injured person when any person who, as to goods or services, uses in commerce any word, term, name, symbol, slogan, trade dress, medium, logo, design, color, sound, scent, shape, object or a combination thereof; or any false origin designation; or any false or misleading description of a fact; or any false or misleading representation of a fact, which is likely to cause confusion or mislead or deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, source, sponsorship, or approval of his/her goods, services, or commercial activities by another person, or in commercial advertising or in promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his/her or another person's goods, services, or commercial activities, shall be held liable in civil action by any person who was injured as a consequence of such acts. The term "any person" includes the Government of Puerto Rico. 10 L.P.R.A. § 223x.

4.54. Also, the owner of a famous mark shall be entitled to the same remedies if a person, without the consent of the owner of a famous mark uses such mark or a term that is substantially similar thereto in commerce in Puerto Rico, if the use of such famous mark or substantially similar term is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, even when the goods or services are different, or there is no likelihood of confusion between such marks, or there is no financial injury if defendant had the intention of causing dilution of the famous mark or of taking advantage of its distinctive nature. 10 L.P.R.A. § 223y.

4.55. Puerto Rico Law 139-2011, Right of Publicity Act, establishes that any natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages. In the event that the consent required under this chapter is not obtained, the plaintiff may seek an injunction against the continued use of said likeness and can recover monetary damages, including any royalties accrued, or financial losses resulting from the violation of the right established herein. 32 L.P.R.A. § 3152.

4.56. Plaintiffs assert that the rights to the Roberto Clemente mark, due to its particularities, necessarily include a property right to his likeness, and that right was transferred as well. If it is determined that, contrary to Plaintiffs assertions, the rights to the Roberto Clemente mark do not include a property right to his likeness or that right was not transferred, the individual Plaintiffs, as heirs, would be the owners of Roberto Clemente likeness according to 32 L.P.R.A. § 3152.

4.57. Likeness is the name, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique. 32 L.P.R.A. § 3151.

4.58. The rights of likeness are freely transferable and descendible property rights, to any person or incorporated entity by written transfer, including, but not limited

to, a signed agreement among the parties, powers, licenses, donations, and wills, or by intestate succession. 32 L.P.R.A. § 3154.

4.59. The term person is defined as a natural person, living or deceased and includes any legal entity that holds the rights of a person's likeness through a license or by transfer of publicity rights. 32 L.P.R.A. § 3151.

4.60. The law provides for both injunctive relief and compensatory damages to a plaintiff who sues for misappropriation or violation of the right of publicity. The court may award damages taking into account the defendant's profits, the amount of any future publicity value the plaintiff may have been denied as a result of the defendant's infringing activities; the value of the detrimental effect that the defendant act would have caused to the plaintiff; and any other factor. The court may award compensatory damages for an amount no greater than three (3) times the amount profited by the defendant and/r for any losses suffered by the plaintiff if the violation was deliberate or carried out with malicious intent. 32 L.P.R.A. § 3153.

4.61. Alternatively, the plaintiff may choose to request that the court rules for statutory damages in an amount of no less than $750 and no greater than $20,000 per violation. Whenever a violation is determined to be deliberate or due to gross negligence, the court may freely increase the amount to a sum no greater than $100,000 per violation. If the court rules in favor of the plaintiff, the court shall always award for legal costs, attorney fees, and expenses. 32 L.P.R.A. § 3153.

4.62. The remedies provided in this section are set forth in addition to the remedies provided by any other applicable state or federal statute. 32 L.P.R.A. § 3153.

4.63. Defendants are compelled to redress the damages for violations of rights of Plaintiffs as described in the preceding statutory provisions and cease the illegal conduct.

4.64. Likewise, Article 1536 of the Puerto Rico Civil Code compel Defendants to redress the all the damages caused to Plaintiffs according to the allegations of this complaint.

**G. Unconstitutionality of statues**

4.65. Any Puerto Rico law that conflicts with the United States Constitution or federal laws is unconstitutional and without effect. U.S. Const. Art. VI, Cl. 2. Likewise, any Puerto Rico law that conflicts with the Constitution of Puerto Rico is unconstitutional and without effect.

4.66. To the extent that Joint Resolutions No. 16 and 17 of 2021 and Puerto Rico Law 67-202 provide for the use of the Roberto Clemente trademark, name and likeness in violation of the Lanham Act, U.S. Const. Amendment V, Puerto Rico Const. Art. II, § 9, U.S. Const. amends. V and XIV and Puerto Rico Const. Art. II, § 7, they are unconstitutional.

4.67. Plaintiffs' assert that Art. 7 of Puerto Rico Law 139-2011 does not deprive them of any property right over Roberto Clemente's mark, name, image or likeness. To the extent that Art. 7 of Puerto Rico Law 139-2011 is construed to the contrary, it would be a violation of the Lanham Act, U.S. Const. Amendment V, Puerto Rico Const. Art. II, § 9, U.S. Const. amends. V and XIV, Puerto Rico Const. Art. II, § 7 and consequently, unconstitutional.

**5. Prayer for relief**

WHERFORE, Plaintiffs respectfully requests the Honorable Court to:

5.1. enter a Declaratory Judgment decreeing that the use of the Roberto Clemente mark, name and likeness pursuant to Puerto Rico Joint Resolutions No. 16 and 17 of 2021 and Law 67-2022 is unlawful, violates the due process right, constitutes trademark infringement, constitutes a violation of the right of publicity and likeness, and is a taking;

5.2. enter a Declaratory Judgment decreeing that to the extent that Joint Resolutions No. 16 and 17 of 2021 and Puerto Rico Law 67-2022 provide for the use of the Roberto Clemente trademark, name and likeness in violation of the Lanham Act, U.S. Const. Amendment V, Puerto Rico Const. Art. II, § 9, U.S. Const. amends. V and XIV and Puerto Rico Const. Art. II, § 7, they are unconstitutional.

5.3. grant injunctive relief proscribing Defendants to use the Roberto Clemente mark, name and likeness, pursuant to Puerto Rico Joint Resolutions No. 16 and 17 of 2021 without just compensation;

5.4. enter a Declaratory Judgment decreeing that just compensation for the use of the mark pursuant to Joint Resolutions No. 16 and 17 of 2021 is no less than $3,150,000.00 for the temporary taking of the trademark;

5.5. order the payment of just compensation to Plaintiffs for the temporary use of the Roberto Clemente mark, name and likeness.

5.6. grant injunctive relief proscribing Defendants the use of the Roberto Clemente mark pursuant to Puerto Rico Law 67-2022 and enjoining the creation of the Roberto Clemente Sports District;

5.7. enter judgment for three times the profits or damages, whichever amount is greater, and for damages, in a sum of not less than $45,000,000.00, together with a reasonable attorney's fee;

5.8. grant any other and further relief as may be deemed just and proper.

The Plaintiffs reserve the right to elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages.

In San Juan, Puerto Rico, November 23, 2022.

*s/Tanaira Padilla Rodríguez*
TANAIRA PADILLA RODRÍGUEZ
USDC-PR No. 227912
tanairapadilla@yahoo.com

Ponce de León Ave. 1225
VIG Tower Suite 1500
San Juan, PR 00907
Tel. 787-620-0527

*Attorney for Plaintiffs*