**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Clemente Properties, Inc., et al., | **Civil No. 22-1373 (GMM)** |
| Plaintiffs, | |
| v. | |
| Hon. Pedro R. Pierluisi Urrutia, Governor of Puerto Rico, in his Official and Individual Capacity and as representative of the Commonwealth of Puerto Rico; et als., | |
| Defendants. | |

## OPINION AND ORDER

Pending before the Court are three motions to dismiss: (1) *Amended and Restated Motion to Dismiss Complaint And Amended Complaint Under FRCP 12(B)(6)* ("Authority's Motion to Dismiss") filed by the Puerto Rico Convention Center District Authority's (the "Authority") (Docket No. 36); (2) *Motion to Dismiss Amended Complaint for Failure to State a Claim Under Federal Rule Of Civil Procedure 12(B)(6)* filed by the Commonwealth of Puerto Rico ("Commonwealth"), Hon. Pedro R. Pierluisi-Urrutia ("Governor Pierluisi"), in his official capacity as Governor of the Commonwealth and in his personal capacity; Eileen M. Vélez-Vega, in her official capacity as Secretary of the Department of Transportation and Public Works ("Department of Transportation") and in her personal capacity ("Secretary of Transportation");

Civil No. 22-1373(GMM)
Page -2-

Francisco Parés-Alicea in his official capacity as Secretary of the Department of the Treasury and in his personal capacity ("Secretary of Treasury"), and Ray J. Quiñones-Vázquez, in his personal capacity as Secretary of the Department of Sports and Recreation ("Secretary of Sports and Recreation") (collectively, "Defendants")(Docket No. 38); and (3) *Motion to Dismiss* filed by the Secretary of Sports and Recreation, in his official capacity (Docket No. 42).

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2022, Clemente Properties, Inc.; 21 In Right, Inc.; Roberto Clemente Jr.; Luis Roberto Clemente; and Roberto Enrique Clemente ("Plaintiffs") filed a Complaint against the Commonwealth, Governor Pierluisi, in his official and individual capacity and as representative of the Commonwealth; the Secretary of Transportation, in her official and individual capacity and as representative of the conjugal partnership composed by her and John Doe; the Secretary of Treasury, in his official and individual capacity; the Secretary of Sports and Recreation, in his official and individual capacity and as representative of the conjugal partnership composed of him and Jane Doe; and the Authority. (Docket No. 1) (the "Complaint").

Therein, Plaintiffs seek: (1) declaratory judgment determining that the use of the Roberto Clemente mark, name, and likeness pursuant to Puerto Rico Joint Resolutions No. 16 and 17

of 2021 and Act 67-2022 is unlawful, violates due process, constitutes trademark infringement, violates the right of publicity, and constitutes a taking; (2) declaratory judgment decreeing that Puerto Rico Joint Resolutions No. 16 and 17 of 2021 and Act 67-2022 are unconstitutional; (3) injunctive relief proscribing Defendants' use of the Roberto Clemente mark and name pursuant to Puerto Rico Joint Resolutions No. 16 and 17 of 2021, without just compensation; (4) declaratory judgment "decreeing that just compensation for the use of the mark pursuant to Joint Resolutions No. 16 and 17 of 2021 is no less than $3,150,000.00 for the temporary taking of the trademark"; (5) "payment of just compensation to Plaintiffs for the temporary use of the Roberto Clemente mark, name and likeness"; (6) injunctive relief proscribing Defendants' use of the Roberto Clemente mark pursuant to Puerto Rico Act 67-2022 and enjoining the creation of the Roberto Clemente Sports District; and (7) "judgment for three times the profits or damages, whichever amount is greater, or for damages, in a sum of not less than $45,000,000.00". Id. at 41-42.

Plaintiffs' claims are brought pursuant to 28 U.S.C.A. § 2201 and 2202; Rule 65 of the Federal Rules of Civil Procedure, 42 U.S.C.A. § 1983 ("Section 1983"); the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051-1127 ("Lanham Act"); the Takings Clause of the Constitution of the United States, U.S. Const. Amend. V., the Due Process Clause, U.S. Const. U.S. Const. Amend. XIV, and

Civil No. 22-1373(GMM)
Page -4-

supplemental claims under Puerto Rico Act 139 of 2011 ("Act 139"), P.R. Laws Ann. Tit. 32 §§ 3151 *et seq.*, and the Puerto Rico Trademarks Act, Act 169 of 2009 ("Act 169"), P.R. Laws Ann. Tit. 10 §§ 223 *et seq.* Id. at 2.

Plaintiffs claim that pursuant to Puerto Rico Joint Resolution No. 16 of 2021, at the beginning of calendar year 2022, the Commonwealth —led by Governor Pierluisi through the Department of Transportation— began to impose the mandatory purchase of a commemorative license plate for the fiftieth anniversary of Roberto Clemente's "Hit 3000." The Commonwealth charged twenty-one dollars ($21.00) for the commemorative plate. Plaintiffs allege that the license plate had an image of Roberto Clemente and included the name "Clemente" with the number "21," the number "50," the word "anniversary," and the phrase "3000 hits." Also, that pursuant to Joint Resolution No. 17 of 2021, there was a mandatory charge of five dollars ($5.00) in addition to the regular costs for duties, tariffs, and fines, for a commemorative vehicle certificate tag. The vehicle certificate tag was yellow, had the figure of Roberto Clemente with the name "Clemente," the number "21," the number "50," and phrase "3000 hits." According to Plaintiffs, the cost charged to the citizens of Puerto Rico was transferred to the Roberto Clemente Sports District Fund, administered by the Department of Treasury, for the exclusive use of the Department of Sports and Recreation. Id. at 8-10.

Civil No. 22-1373(GMM)
Page -5-

In addition, Plaintiffs argue that Defendants acted willfully, intentionally, and with full awareness about the mark's misappropriation, because it is allegedly common knowledge that the Plaintiffs are the owners of the Roberto Clemente mark, his right of publicity, his likeness, and the legacy it represents. Plaintiffs claim that the Roberto Clemente mark has been in use since 1955 and Clemente Properties, Inc. registered the mark with the United States Patent and Trademark Office ("USPTO") under Registration No. 5,176,650, Serial number 86048262. Id. at 5. Therefore, they argue that the unauthorized use by the Commonwealth constitutes an infringement of a registered trademark and a violation of the Takings and Due Process Clauses of the United States Constitution.

On November 23, 2022, Plaintiffs filed an Amended Complaint[1], which maintained the same allegations, but included additional assertions regarding the adoption of the Joint Resolution No. 16. They posit that before its adoption, they had already authorized Ciudad Deportiva Roberto Clemente to use the trademark, name, and likeness of Roberto Clemente for vehicles' license plates. (Docket No. 27). Plaintiffs add that Ciudad Deportiva Roberto Clemente

---

[1] On September 28, 2022, the Authority filed a motion to dismiss for failure to state a claim. (Docket No. 14). On November 2, 2022, Governor Pierluisi and Defendants filed a motion to dismiss for failure to state a claim. (Docket No. 19). The Secretary of Sports and Recreation also filed a *Motion for Joinder* to the motion to dismiss at Docket No. 19. (Docket No. 22). On December 2, 2023, these motions to dismiss were denied without prejudice as moot due to the filing of the Amended Complaint. *See* Docket No. 32.

Civil No. 22-1373(GMM)
Page -6-

planned to raise funds by the issuing of commemorative license plates to be available to the public in exchange for a voluntary donation of $2.10. Id. at 12.

On December 26, 2023, the Authority filed its Motion to Dismiss. (Docket No. 36). The Authority argues dismissal is warranted under Rule 12 (b)(6) since: (1) it is not acting under color of state law to illegally, culpably, negligently, intentionally, knowingly, or willfully, use and pretend to continue using the Roberto Clemente mark, name, and likeness in contravention of the aforementioned legal provisions; (2) the Authority's only involvement is incidental and only regards its participation in the legislative process before the adoption of Act 67-2022; (3) there is no relief sought from the Authority as there is no claim that it has caused any breach, violation, damage, and/or unlawful use of Plaintiffs' property, and the allegations regarding the Authority relate to obligations which the Authority will legally perform under state law. According to the Authority, Act 67-2022 imposes obligations to be carried out once the property is transferred to the Commonwealth, obligations which the Authority cannot even perform to date; and (4) that the Authority, as a government entity created under Puerto Rico Act 351-2000, has a legal obligation to be bound by the laws duly enacted by the Puerto Rico legislature, in which case, the Authority has no

Civil No. 22-1373(GMM)
Page -7-

influence on which laws are enacted, and thus, no bearing on the passing of Act 67-2022. Id. at 6-11.

On January 9, 2023, the Defendants filed a *Motion to Dismiss Amended Complaint for Failure to State a Claim under Federal Rule of Civil Procedure 12 (b)(6)*. (Docket No. 38). First, Defendants argue that Plaintiffs' claims against the Commonwealth and the official capacity Defendants are barred by sovereign immunity as provided by the Eleventh Amendment of the United States Constitution. Specifically, they claim that this Court does not have jurisdiction to entertain suits under the Lanham Act, because suits against states and its officers, in their official capacity, are barred by the Eleventh Amendment immunity, as determined by the Supreme Court in College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666 (1999). In addition, Defendants posit that the monetary claim pursuant to the Fifth Amendment Takings Clause against the Commonwealth is also barred by the Eleventh Amendment immunity.

Second, Defendants argue that, under the Lanham Act, Plaintiffs lack standing to claim damages suffered by the corporations Clemente Properties, Inc., and 21 In Right, Inc.

Third, Defendants assert that Plaintiffs lack standing to claim damages suffered by Ciudad Deportiva Roberto Clemente, Inc., an independent corporate entity which is not a party to this case. Defendants contend that Plaintiffs also lack standing to assert

Civil No. 22-1373(GMM)
Page -8-

the land transfer claims mandated by Act 67-2022 and that the Court
lacks jurisdiction over such matters since the requested relief
would entail the Court enjoining the land transfer mandated by
this statute, from Ciudad Deportiva Roberto Clemente, Inc., back
to the Commonwealth, through the Sports and Recreation Department.

Fourth, Defendants argue that Plaintiffs fail to state a claim
for violations of their right to Substantive Due Process under the
Fourteenth Amendment and that having asserted a Fifth Amendment
Takings Clause claim, the alleged infringement of their property
rights are to be ruled upon under the standards of that
constitutional clause, and not the due process clause.

Fifth, Defendants posit that Plaintiffs fail to state a claim
under the Lanham Act for individual liability against Defendants
in their personal capacity.

Sixth, Defendants contend that Plaintiffs fail to establish
a false advertising claim and that there is no "commercial
advertising or promotion" nor "intention to influence potential
customers" in this case which would activate liability under the
Lanham Act.

Seventh, Defendants allege that image rights and rights of
publicity are determined not by federal law but by state law, and
that under Puerto Rico Act 139, such right extends up to twenty-
five years after the person's death. They posit that in Roberto
Clemente's case, this period expired in 1998.

Eighth, Defendants argue that Plaintiffs' request for injunctive relief for the alleged trademark violations has become moot since the sale of license plates and license labels mandated by Joint Resolutions 16-2021 and 17-2021 expired by its own terms on December 31, 2022.

Ninth, Defendants contend that Plaintiffs failed to state a claim against personal capacity Defendants under Section 1983, since their personal involvement, as described in the Amended Complaint, does not support a liability finding against them under that statute.

Tenth, that Defendants who were sued in their personal capacity are entitled to qualified immunity, to the extent that they were carrying out their legal duties by enforcing statutes validly enacted by the Commonwealth's Legislative Assembly, against which no constitutional challenge has been raised by Plaintiffs.

Eleventh, Defendants argue that after dismissing all of Plaintiffs' federal claims the Court should decline to exercise supplemental jurisdiction over claims brought under the Puerto Rico's Constitution and laws.

On January 17, 2023, the Secretary of Sports and Recreation filed a Motion to Dismiss. (Docket No. 42). He argues that Eleventh Amendment immunity bars any claim for monetary relief against him in his official capacity as Secretary of Sports and Recreation. In

Civil No. 22-1373(GMM)
Page -10-

addition, for the same reasons, he contends that claims under Section 1983 brought against him in his official capacity must be dismissed. Moreover, he states that as Secretary of Sports and Recreation he is immune from suit under the Takings Clause and the Lanham Act. Furthermore, he maintains that Plaintiffs have not raised a claim upon which a relief may be granted since he has not yet executed his rights, duties and function pursuant to Act 67-2022.

On February 24, 2023, Plaintiffs filed a *Response in Opposition to Puerto Rico Convention Center District Authority's Motion to Dismiss Amended Complaint*. (Docket No. 44). Plaintiffs argue that the Authority's Motion to Dismiss must be disregarded, because there was a straightforward trademark infringement claim. Specifically, they contend that the Roberto Clemente mark is registered in International Class 41 which includes entertainment services. Furthermore, they posit that that the image and likeness of Roberto Clemente are an integral part of the registered trademark and that Section 43 (a) of the Lanham Act, provides the federal equivalent protection of the right for publicity and can thus protect an individual's image or likeness from unauthorized use. Additionally, they argue that the Authority has actively pursued and contributed to the creation of the Roberto Clemente Sports District and had a leading role in its development. For that reason, injunctive relief is warranted.

Also on February 24, 2023, the Plaintiffs filed a *Response in Opposition to Secretary of the Department of Sports and Recreation's Motion to Dismiss Amended Complaint*. (Docket No. 45). Therein, they argue that the Amended Complaint should not be dismissed based on Eleventh Amendment immunity, since no legal or judicial doctrine in place justifies applying the principles of Eleventh Amendment immunity in Puerto Rico. Moreover, they maintain that claims pursuant to the Lanham Act may not be dismissed on Eleventh Amendment grounds, because the Supreme Court of the United States has only determined that States' sovereign immunity cannot be validly abrogated in relation to a false-advertising claim under the Lanham Act. Id. at 10-17. Regarding the Takings Clause, they also allege that Eleventh Amendment immunity does not apply. Lastly, Plaintiffs allege that they are entitled to monetary and equitable remedies against the Department of Sports and Recreation "for the creation and further development of the Roberto Clemente Sports District using and taking the Plaintiffs' trademark, and for the unauthorized use and taking of the Roberto Clemente trademark in license plates and vehicle certificate labels, which generated earnings for [them]." Id. at 19. They claim that they are entitled to prospective injunctive relief against state officials in their official capacity and that these claims cannot be dismissed based on the Secretary of Sports and Recreation's allegation that they are not yet the owner of the

property or lands of the Roberto Clemente Sports District and that they have not executed any duties as owners.

On March 17, 2023, Plaintiffs filed a *Response in Opposition to Government and Individual Defendants' Motion to Dismiss Amended Complaint.* (Docket No. 53). Plaintiffs reiterate that "Puerto Rico possesses no sovereign immunity or Eleventh Amendment immunity from federal law or federal-court suits." Id. at 9. Additionally, they assert that there is no immunity from the application of the Lanham Act. Furthermore, Plaintiffs contend that the reference to Act 139 asserts an additional or alternative source of ownership of the Roberto Clemente image, name, and likeness in violation of that property right under the statute. They also argue that they have standing as to these claims since they are the heirs of Roberto Clemente, to whom the law, without any other legal contract or act, invests with the property and transference rights to Roberto Clemente's image. Regarding the alleged due process violation, Plaintiffs contend that their claim is valid, since even if commemorating Roberto Clemente could be a legitimate government interest -which they allege it is not- there is no need for the misappropriation of the trademark to pursue that goal.

Plaintiffs also specifically respond to arguments regarding liability pursuant to the Lanham Act. Regarding the individual liability of Defendants, Plaintiffs allege that Defendants' argument for lack of involvement or participation in the Lanham

Act violations is meritless. As to the claims of commercial advertising or promotion and intention to influence potential customers, Plaintiffs argue that the false advertising claim must stand, since Defendants made misleading and false descriptions of facts, in relation to the sales of Roberto Clemente name, image, likeness, and trademark in the license plates and license labels, and in relation to the Roberto Clemente Sports District project - that would generate significant revenue for the government, and have therefore caused damages. On the other hand, regarding the mootness of the request for injunctive relief, Plaintiffs contend that the temporary taking of the trademark persists until just compensation is awarded and that equitable relief for trademark violations for the sale of license plates and license labels is still in order.

Regarding the Section 1983 claims, Plaintiffs respond that Defendants are not entitled to qualified immunity regarding the constitutional violations because they all originate from the unauthorized use or appropriation of the registered trademark.

On May 22, 2023, the Commonwealth, Governor Pierluisi, the Secretary of Transportation, the Secretary of Treasury, and the Secretary of Sports and Recreation filed *Reply to Opposition to Motion to Dismiss Amended Complaint*. (Docket No. 64). Regarding Eleventh Amendment immunity, Defendants argue that the doctrine still stands and is applicable to this case. Furthermore, they

cite Allen v. Cooper, 140 S. Ct. 994 (2020) to sustain that
Congress has not abrogated the State's sovereign immunity under
the Eleventh Amendment regarding intellectual property claims. As
to the claims under the Lanham Act, Defendants respond that
"Plaintiffs do not sell license plates nor yearly license labels
and no amount of artful pleading can establish the pleading
requisite of consumers withholding trade from them." Id. at 11.
Also, in addressing the arguments relating to the substantive due
process claims, Defendants assert that Plaintiffs' claims fall
outside the very limited scope defined by applicable law and find
no support in current substantive due process standards. In
addition, Defendants posit there are no legal grounds for
injunctive relief for official capacity Defendants to stop acting
when the statutory authorization, provided by Act 67-2022, for
them to carry those actions has already expired. They argue that
this is strictly a legal question that arises from Act 67-2022 and
requires no evidence to adjudicate it. Lastly, Defendants allege
that Plaintiffs provided no basis to establish any congressional
intention to abolish qualified immunity as a possible defense in
Lanham Act claims.

## II. LEGAL STANDARD

A.  Motion to Dismiss

To survive a motion to dismiss, a complaint must contain a
"short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " Id. (*quoting* Twombly, 550 U.S. at 557). *See also* Álvarez-Maurás v. Banco Pop. of Puerto Rico, 919 F.3d 617, 622 (1st Cir. 2019).

    1.   Federal Rule of Civil Procedure 12(b)(1)

It is settled that the standard followed by the Court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." *See* Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998), as restated in Rolon v. Rafael Rosario & Associates, Inc., et al., 450 F.Supp.2d 153, 156 (D.P.R. 2006). Moreover, [m]otions brought

under Rule 12(b)(1) are subject to the same standard of review as
Rule 12(b)(6). *See* <u>Negron-Gaztambide v. Hernandez-Torres</u>, 35 F.3d
25, 27 (1st Cir. 1994); <u>De Leon v. Vornado Montehiedra Acquisition
L.P.</u>, 166 F. Supp. 3d 171, 173 (D.P.R. 2016). As such,
"[d]etermining whether a complaint states a plausible claim for
relief will. . .be a context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense." <u>Iqbal</u>, 556 U.S. at 679.

A motion to dismiss based on state sovereign immunity is
appropriate under both Rule 12(b)(1) and Rule 12(b)(6). The defense
of sovereign immunity is a claim that a court lacks the subject-
matter jurisdiction to hear a case and thus can be brought under
Rule 12(b)(1). *See* <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358,
362-63 (1st Cir. 2001) (*citing* <u>Murphy v. United States</u>, 45 F.3d
520, 522 (1st Cir. 1995)). In <u>Valentin v. Hospital Bella Vista</u>,
the Court held that Fed. R. Civ. P. 12(b)(1) is a "large umbrella,
overspreading a variety of different types of challenges to subject
matter jurisdiction" including "considerations of ripeness,
mootness, sovereign immunity, and the existence of federal
question jurisdiction". <u>Id.</u> at 363.

Where subject matter jurisdiction is challenged under
12(b)(1), the party asserting jurisdiction bears the burden of
demonstrating the existence of federal subject matter
jurisdiction. *See* <u>Skwira v. United States</u>, 344 F.3d 64, 71 (1st

Cir. 2003); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir.2004).

    2.   Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." Twombly, 550 U.S. at 544. Stated differently, "[a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). In analyzing the sufficiency of the complaint, the Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *See* Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000)).

Under Rule 12(b)(6), dismissal is proper when "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 48 (1st Cir. 2000) (*citing* Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

Furthermore, dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v.

Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (*quoting* Berner
v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)); Gagliardi v.
Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

### III. APPLICABLE LAW AND DISCUSSION

Courts presented with motions to dismiss under both Rules
12(b)(1) and 12(b)(6) should ordinarily decide jurisdictional
questions before addressing the merits. *See* Deniz v. Municipality
of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002). Thus, the Court
begins its analysis with Defendants' arguments regarding Eleventh
Amendment immunity. Plaintiffs argue that Puerto Rico is a
territory of the United States and, as such, the Eleventh Amendment
immunity does not apply. To this end, Plaintiffs essentially allege
that the Eleventh Amendment exists for States, not territories
like the Commonwealth. Plaintiffs base their arguments mainly on
Puerto Rico v. Sánchez Valle, 579 U.S. 59 (2016). Furthermore,
Plaintiffs argue that Congress validly abrogated immunity for of
all the governmental entities and individuals within the United
States, including territories, under the Lanham Act through the
Trademark Amendments Act of 1999.

The Commonwealth and official capacity Defendants, on the
other hand, posit that the case against them should be dismissed
pursuant to the Eleventh Amendment. According to them, and in line
with Supreme Court precedent established in College Savings Bank
and reiterated most recently in Allen v. Cooper, Congress did not

abrogate state sovereign immunity in the amendments to the Lanham Act.

A.   <u>The Doctrine of Stare Decisis Controls this Case</u>

Since the Plaintiffs contend that this Court should disregard First Circuit precedent based on their interpretation of the United States Supreme Court's case law on the applicability of the state sovereign immunity doctrine to the Commonwealth, we must first discuss the doctrine of stare decisis.

This doctrine comes from the Latin maxim "stare decisis et non quieta movere," meaning "to stand by the thing decided and not disturb the calm." <u>Ramos v. Louisiana</u>, --- U.S. ----, 140 S. Ct. 1390, 1411, 206 L.Ed.2d 583 (2020). "The doctrine of stare decisis renders the ruling of law in a case binding in future cases before the same court or other courts owing obedience to the decision." <u>Gately v. Massachusetts</u>, 2 F.3d 1221, 1226 (1st Cir. 1993). It is "a foundation stone of the rule of law." <u>Allen v. Cooper</u>, 140 S. Ct. at 1003(*quoting* <u>Michigan v. Bay Mills Indian Cmty</u>., 572 U.S. 782, 798, 134 S.Ct. 2024, 188 L.Ed.2d 1071 (2014)).

Commonly, the doctrine of stare decisis is divided into horizontal and vertical precedent. *See* Bryan A. Garner et al., <u>The Law of Judicial Precedent</u> 27 (2016). Pertinent here, vertical precedents are decisions in "the path of appellate review," meaning Supreme Court decisions control all lower federal courts, and circuit court decisions control the dispositions of the federal

Civil No. 22-1373(GMM)
Page -20-

district courts in their circuits. Id. at 28. The Supreme Court
has repeatedly stressed the importance of both circuit and district
courts faithfully following vertical precedent. *See* Eberhart v.
United States, 546 U.S. 12, 19-20 (2005). Hence, we are obliged to
follow circuit precedent unless undermined by intervening Supreme
Court precedent or some other compelling authority. *See* Reisman v.
Associated Facs. of Univ. of Maine, 939 F.3d 409, 414 (1st Cir.
2019) (*citing* United States v. Barbosa, 896 F.3d 60, 74 (1st Cir.
2018)).

Absent guidance of the Supreme Court regarding the
Commonwealth's Eleventh Amendment immunity, this Court is bound by
First Circuit rulings until any doctrinal developments are
established by Supreme Court precedent.

B.   Eleventh Amendment Immunity

1. Generally

The Eleventh Amendment of the United States Constitution
provides that "[t]he Judicial power of the United States shall not
be construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of another
State, or by Citizens or Subjects of any Foreign State." U.S.
Const. amend. XI.

Grounded in the principles of federalism, the Eleventh
Amendment provides that each state is a sovereign entity and
therefore "not amenable to suit without its consent." Seminole

Civil No. 22-1373(GMM)
Page -21-

Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996). Essentially, the
Eleventh Amendment decrees that states cannot be sued in federal
court. The amendment "acts as a gatekeeper to the enforcement of
federal law against state actors." *See* LAURA E. LITTLE, EXAMPLES
& EXPLANATIONS: FEDERAL COURTS 371 (3rd ed. 2013). In fact, "[t]he
very object and purpose of the [Eleventh] Amendment were to prevent
the indignity of subjecting a State to the coercive process of
judicial tribunals at the instance of private parties." Puerto
Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506
U.S. 139, 146 (1993) (*quoting* In re Ayers, 123 U.S. 443, 505
(1887)). That is the essence of Eleventh Amendment immunity, also
known as sovereign immunity.

    2. Eleventh Amendment Immunity and Puerto Rico

    Regarding the Commonwealth, "[t]he First Circuit has
consistently held that Puerto Rico, though obviously not a state,
is entitled to Eleventh Amendment immunity." *See* What Constitutes
the State for Eleventh Amendment Purposes, 9C Charles Alan Wright
& Arthur R. Miller, Federal Practice and Procedure § 3524.2 (3d
ed.) The First Circuit first embraced this holding in 1981, in an
opinion by then Judge Stephen Breyer. *See* Ezratty v. Puerto Rico,
648 F.2d 770(1st Cir. 1981). Since 1981 —for over four decades—
the First Circuit has reiterated the holding "at least twenty-
eight times —about once a year— and described it as 'settled,' a
'verity,' 'consistently held,' and 'beyond dispute.'" Adam D.

Civil No. 22-1373(GMM)
Page -22-


Chandler, Puerto Rico's Eleventh Amendment Status Anxiety, 120
Yale L.J. 2183, 2189 (2011). The Court has even referred to these
precedents as a "phalanx of cases." Id. (*quoting* Jusino Mercado v.
Commonwealth of Puerto Rico, 214 F.3d 34, 39 (1st Cir. 2000)). *See*
*for example*, the following cases where the First Circuit has held
that Puerto Rico enjoys Eleventh Amendment protection: Borrás-
Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d
26, 33 (1st Cir. 2020) (noting that "Puerto Rico is treated as a
state for Eleventh Amendment purposes" but avoiding consideration
of the constitutional immunity question because the state entity
clearly prevailed on the merits) (*quoting* Fresenius Med. Care
Cardiovascular Res., Inc. v. P.R. and Caribbean Cardiovascular
Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003)); Grajales v. P.R.
Ports Auth., 831 F.3d 11, 15 (1st Cir. 2016) (acknowledging that
Puerto Rico "enjoys" sovereign immunity in the same way as the
states) (*citing* Jusino Mercado v. Puerto Rico, 214 F.3d 34, 39
(1st Cir. 2000)); Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d
508, 530 n.23 (1st Cir. 2009) ("We further note that '[t]he
Commonwealth of Puerto Rico is treated as a state for purposes of
Eleventh Amendment immunity analysis.'") (*quoting* Díaz-Fonseca v.
Puerto Rico, 451 F.3d 13, 33 (1st Cir.2006)); Maysonet-Robles v.
Cabrero, 323 F.3d 43, 48 n.3 (1st Cir. 2003) ("This circuit has
consistently held that Puerto Rico enjoys immunity from suit
equivalent to that afforded to the States under the Eleventh

Civil No. 22-1373(GMM)
Page -23-


Amendment."); Arecibo Community Health Care, Inc. v. Cmmw. of
Puerto Rico, 270 F.3d 17, 21 n.3 (1st Cir. 2001)("It is well
settled in this circuit that the Commonwealth of Puerto Rico 'is
protected by the Eleventh Amendment to the same extent as any
state...'"); Ortiz-Feliciano v. Toledo-Dávila, 175 F.3d 37, 39
(1st Cir. 1999)("This circuit has already decided that the
Commonwealth is protected by the Eleventh Amendment to the same
extent as any state..."); Metcalf & Eddy, Inc. v. Puerto Rico
Aqueduct and Sewer Auth., 991 F.2d 935, 939 n.3 (1st Cir. 1993)("We
have consistently treated Puerto Rico as if it were a state for
Eleventh Amendment purposes.").

In addition, and pertinent to this case, this District has
previously ruled in intellectual property cases that the Eleventh
Amendment applies to the Commonwealth. In Berio-Ramos v. Flores-
Garcia, 2016 WL 270385 (D.P.R. 2016), this Court addressed
arguments that the Senate of Puerto Rico is not immune from
copyright infringement suits.  On that occasion —citing Maysonet-
Robles v. Cabrero, 323 F.3d at 53 and Porto Rico v. Castillo, 227
U.S. 270, 273 (1913)— the Court ruled that the Copyright Remedy
Clarification Act did not abrogate the Eleventh Amendment's
sovereign immunity for Puerto Rico; that Puerto Rico is considered
a state for purposes of federal immunity; and that the application
of Eleventh Amendment immunity is not limited to states and applies

to territories like Puerto Rico. Specifically, the Court rebutted

the same arguments that Plaintiffs bring here by concluding:

> The argument overlooks the fact that in 1913, when Puerto
> Rico was subject to the Jones Act, the Supreme Court
> held that as an unincorporated territory of the United
> States its government is entitled to Eleventh Amendment
> immunity. _Porto Rico v. Castillo_, 227 U.S. 270, 273
> (1913). And that situation has not changed after 1952
> under the Federal Relations Act. See, Maysonet-Robles,
> 323 F.3d at 53 (1st Cir. 2003) ("Even though Puerto Rico
> is an unincorporated territory of the United States, its
> government has always been considered a sovereign entity
> entitled to immunity from suit without its consent").

_Berio-Ramos v. Flores-Garcia_, supra. _See also_, _Rodriguez v. Casa_

_Salsa Restaurant_, 260 F. Supp. 2d 413 (D.P.R. 2003) (In an opinion

dismissing Lanham Act trade dress infringement claims under Fed.

R. Civ. P. 12(b)(6), the court noted that it had previously

dismissed the claims against co-defendant Commonwealth based on

Eleventh Amendment immunity).

Moreover, quite recently the United States Supreme Court in

_Financial Oversight & Management. Board. for P.R. v. Centro de_

_Periodismo Investigativo, Inc._, 598 U.S. 339 (2023), "assum[ed]

without deciding that Puerto Rico is immune from suit in federal

district court. . ." Although it did not decide if the Commonwealth

is entitled to sovereign immunity, the Court acknowledged that

"Circuit precedent ha[s] settled Puerto Rico's own immunity. . ."

_Id._ at 345.

It is certainly clear that (1) the First Circuit has long

treated Puerto Rico like a state for Eleventh Amendment purposes

and (2) the Supreme Court has expressly reserved the question of whether Eleventh Amendment immunity principles apply to the Commonwealth. Hence, as discussed above, this Court is required to follow the First Circuit, and rules that Eleventh Amendment sovereign immunity applies to the Commonwealth.

3. Exceptions to Eleventh Amendment immunity

The United States Supreme Court has recognized "only two circumstances in which an individual may sue a State: First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment. . .Second, a State may waive its sovereign immunity by consenting to suit." College Savings Bank, 527 U.S. at 670.

a. Abrogation

The Supreme Court has held that to abrogate the states' immunity under the Eleventh Amendment, Congress "must make its intent to abrogate sovereign immunity 'unmistakably clear in the language of the statute.'" Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc., 598 U.S. at 346 (quoting Kimel v. Florida Bd. of Regents 528 U.S. 62, 73 (2000)). Supreme Court precedent has recently reiterated this point stating, "[i]f a defendant enjoys sovereign immunity, abrogation requires an 'unequivocal declaration' from Congress." Id. at 347 (quoting Dellmuth v. Muth, 491 U.S. 223, 232 (1989)); see also Seminole Tribe of Fla., 517 U.S. at 55.

Civil No. 22-1373(GMM)
Page -26-

       i.   <u>Congress has not abrogated sovereign immunity under the Lanham Act</u>

Regarding intellectual property, Congress has enacted statutes barring state entities from asserting sovereign immunity in infringement matters. Yet, the Supreme Court has invalidated these statutes. In <u>Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank</u>, 527 U.S. 627 (1999), the Court found that the Patent and Plant Variety Protection Remedy Clarification Act, which abrogated state immunity from patent infringement suits, was unconstitutional. Likewise, in <u>College Savings Bank</u>, 527 U.S. at 670, a decision issued on the same day as <u>Florida Prepaid</u>, the Court found that the Trademark Remedy Clarification Act, which abrogated state sovereign immunity for claims under the Lanham Act, was unconstitutional. More recently, in <u>Allen v. Cooper</u>, the Court ruled that the Copyright Remedy Clarification Act of 1990, which abrogated state immunity for liability for copyright infringement, was also unconstitutional.

Hence, "Congress has not abrogated immunity for intellectual property claims, including trademark claims, brought under the Lanham Act and subsequent amendments." <u>Kentucky Mist Moonshine, Inc. v. University of Kentucky</u>, 192 F.Supp.3d 772 (2016) (*citing* <u>Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. at 631 n.1; <u>College Savings Bank</u>, 527 U.S. at 691). To date, all federal courts that have addressed this issue have concluded the same. *See*

*also* Board of Regents of the Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448, 458 (7th Cir. 2011) (Observing that "these [Supreme Court] decisions appear to foreclose any argument that Congress has properly abrogated" state sovereign immunity to liability in trademark actions); Jackson v. State of Connecticut Dep't of Pub. Health, No. 3:15-CV-750 (CSH), 2016 WL 3460304, at *12 (D. Conn. June 20, 2016) ("Just as the Eleventh Amendment precludes suits against the State in § 1983 actions, such immunity also exists with respect to the Lanham Act[.]"); Utah Republican Party v. Herbert, 141 F. Supp. 3d 1195, 1200 (D. Utah 2015) ("*College Savings Bank* made clear that "the Trademark Remedy Clarification Act did not abrogate sovereign immunity for actions brought under the Lanham Act.").

Moreover, Plaintiffs misread the purpose of the Trademark Amendments Act of August 5, 1999, PL 106-43 (S 1259), which they argue was enacted by Congress after the Florida Prepaid cases to reinstate their intention to abrogate state sovereign immunity. A review of the Congressional record suggests otherwise: "our bill will amend the Lanham Act to subject the federal government to suit for trademark infringement and dilution." 145 Cong. Rec. S7452-04, 145 Cong. Rec. S7452-04, S7454, 1999 WL 412237. The congressional record clearly reflects the legislature's intention was not to reinstate the dispositions regarding state sovereign immunity, which had just been declared unconstitutional:

Civil No. 22-1373(GMM)
Page -28-

      The Hatch-Leahy Trademark Amendments Act is significant legislation to enhance protection for trademark owners and consumers by making it possible to prevent trademark dilution before it occurs, by clarifying the remedies available under the Federal trademark dilution statute when it does occur, by providing recourse against the Federal Government for its infringement of others' trademarks, and by creating greater certainty and uniformity in the area of trade dress protection.

                . . .

      Third, the bill amends the Lanham Act to allow for private citizens and corporate entities to sue the Federal Government for trademark infringement and dilution. Currently, the Federal Government may not be sued for trademark infringement, even though the Federal Government competes in some areas with private business and may sue others for infringement. This bill would level the playing field, and make the Federal Government subject to suit for trademark infringement and dilution. I note that the Lanham Act also subjects the States to suit, but that provision has now been held unconstitutional. Last week, the Supreme Court held in College Savings Bank versus Florida Prepaid Postsecondary Education Expense Board that federal courts were without authority to entertain these suits for false and misleading advertising, absent the State's waiver of sovereign immunity. This case (as well as the other two Supreme Court cases decided the same day), raise a number of important copyright, federalism and other issues, but do not effect the provision in the bill that waives Federal government immunity from suit.

See 145 Cong. Rec. S8252-01, 145 Cong. Rec. S8252-01, S8253-54, 1999 WL 484889 (emphasis added).

      In other words, the congressional intention when adopting the Trademark Amendments Act was to establish sovereign immunity abrogation as to the federal government, not for states or territories.

Civil No. 22-1373(GMM)
Page -29-

In addition, recent congressional work confirms that — contrary to Plaintiffs' arguments— Congress did not validly abrogate state sovereign immunity as to trademark claims under the Lanham Act and its amendments. The United States Senate recently requested a study from the United States Patent and Trademark Office, in light of the ruling in Allen v. Cooper, which to their understanding "created a situation in which copyright owners are without remedy if a State infringes their copyright and claims State sovereign immunity under the Eleventh Amendment of the U.S. Constitution", which "was already the case in patent law and some aspects of federal trademark law following two Supreme Court decisions in 1999." *See* U.S. PATENT AND TRADEMARK OFFICE, REPORT TO CONGRESS: INFRINGEMENT DISPUTES BETWEEN PATENT AND TRADEMARK RIGHTS HOLDERS AND STATES AND STATE ENTITIES (Aug. 31, 2021) 20. As per letter from Senators Patrick Leahy and Thom Tillis, dated April 28, 2020, "Allen v. Cooper provided Congress a blueprint for how to validly abrogate State sovereign immunity from certain patent and trademark infringement claims." To that extent, they requested guidance on whether legislative action was necessary to address this matter.

Plaintiffs argue that their trademark claims are not barred because Congress has abrogated the Commonwealth's immunity under the Eleventh Amendment. Yet, as discussed, the Supreme Court made clear in College Savings that Congress did not abrogate sovereign immunity for actions brought under the Lanham Act. This means that,

to date, the Commonwealth enjoys sovereign immunity with respect to Lanham Act claims, unless it has waived its sovereign immunity.

### b. Waiver

Sovereign immunity is "a personal privilege which [a State or entity of the State] may waive at pleasure." College Saving Bank, 527 U.S. at 675 (*quoting* Clark v. Barnard, 108 U.S. 436, 447 (1883)). However, the decision to waive such immunity "is altogether voluntary on the part of the sovereignty." Id. (*quoting* Beers v. Arkansas, 20 How. 527, 529, 15 L.Ed. 991 (1858)). A waiver may be found where (1) a State "voluntarily invokes jurisdiction" by filing suit in federal court, or (2) a State "makes a 'clear declaration' that it intends to submit itself to. . . [the court's] jurisdiction[.]" Id. (*quoting* Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)). When reviewing a state's words, courts should infer waiver only "by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." Edelman v. Jordan, 415 U.S. 651, 673 (1974) (*quoting* Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

In other words, after College Savings, any waiver of sovereign immunity by a state, or in this case by the Commonwealth, must be express and voluntary, and cannot be implied or constructive. Under this "stringent" standard, Plaintiffs must show express or

Civil No. 22-1373(GMM)
Page -31-

unequivocal waiver of immunity by the Commonwealth with respect to
Lanham Act claims. They fail to do so. There is no suggestion in
Plaintiffs' Amended Complaint that the Commonwealth has expressly
consented to being sued in federal court, nor is there any
suggestion that it has, in some other way, waived its right to
sovereign immunity and thus exposed itself to a suit in the federal
jurisdiction. In fact, the Amended Complaint is completely devoid
of any allegation or explanation of how Plaintiffs contend that
they can bypass the Commonwealth's sovereign immunity in order to
bring these claims for damages and injunctive relief against it.

      c. <u>Ex Parte Young: Defendants in their Official Capacity</u>

There is one remaining exception to the sovereign immunity
doctrine. The Eleventh Amendment generally bars suits against
states and state officers in their official capacity. "However,
the exception to Eleventh Amendment immunity laid out in <u>Ex parte
Young</u>, 209 U.S. 123 (1908), allows federal courts to "'grant [ ]
prospective injunctive relief to prevent a continuing violation of
federal law,' in part because 'a suit challenging the
constitutionality of a state official's action in enforcing state
law is not one against the State.'" <u>Doe v. Shibinette</u>, 16 F.4th
894, 903 (1st Cir. 2021) (*quoting* <u>Negrón-Almeda v. Santiago</u>, 528
F.3d at 24); *see also* <u>Green v. Mansour</u>, 474 U.S. 64, 68, (1985).

While it is true that claims for prospective injunctive relief
may be advanced against state officials under the <u>Ex parte Young</u>

Civil No. 22-1373(GMM)
Page -32-

exception, claims for "retroactive monetary relief" are barred. "It has remained abundantly clear. . .that the Eleventh Amendment protects a state official, acting in his official capacity, from any claim for retrospective monetary relief, just as if it were a suit against the state itself." Mills v. Maine, 118 F.3d 37, 54 (1st Cir. 1997). "The *Ex parte Young* doctrine does not apply in cases where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity." Vega Castro v. Puerto Rico, 43 F.Supp.2d 186, 191 (D.P.R. 1999).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (*quoting* Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring in part and concurring in the judgment)) (emphasis added). "[T]he pivotal question to be decided when a defendant brings a motion to dismiss is whether the requested relief would directly bring an end to an ongoing violation of federal law." Hootstein v. Collins, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) (*citing* Papasan v. Allain, 478 U.S. 265,

278 (1986)). In addition, to pursue the claims for prospective injunctive relief, the state officer named in the suit "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party. Ex parte Young, 209 U.S. at 157.

We must also review if the requested equitable relief has become moot. "The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003)). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968). One "reason for mootness is that a court cannot provide meaningful relief to the allegedly aggrieved party," especially when "the only relief requested is an injunction," and "there is no ongoing conduct left for the court to enjoin." U.S. Conf. of Cath. Bishops, 705 F.3d at 53.

Declaratory judgements deeming past conduct illegal are similarly disfavored because "[t]he Supreme Court has admonished that federal courts 'are not in the business of pronouncing that past actions [that] have no demonstrable continuing effect were

Civil No. 22-1373(GMM)
Page -34-

right or wrong.'" Id. (quoting Spencer v. Kemna, 523 U.S. 1, 18,
118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)). For declaratory relief
to survive a mootness challenge, the facts alleged must "show that
there is a substantial controversy. . .of sufficient immediacy and
reality to warrant the issuance of a declaratory judgment." Preiser
v. Newkirk, 422 U.S. 395, 402 (1975) (quoting Md. Cas. Co. v. Pac.
Co., 312 U.S. 270, 273 (1941)).

    This court now employs the inquiry to determine if the
Plaintiffs' Ex parte Young claims proceed. In the instant case,
Plaintiffs are seeking monetary relief for the damages allegedly
caused by the Commonwealth and official capacity Defendants.
Plaintiffs also seek declaratory and injunctive relief regarding
the Puerto Rico Joint Resolutions No. 16 and 17 of 2021 and Law
67-2022 which they allege provide for the use of the Roberto
Clemente trademark and thus violate their due process rights and
constitute trademark infringement. To determine whether Ex parte
Young applies, the Court must evaluate whether the complaint: (1)
alleges an ongoing violation of federal law; and (2) seeks relief
properly characterized as prospective monetary relief which is
barred by the Eleventh Amendment.

    As to the first part of the Ex parte Young inquiry, Plaintiffs
only seek declaratory judgment that Defendants past conduct was
unlawful. On this matter, there is no real question of conflicting

Civil No. 22-1373(GMM)
Page -35-

legal interests for the Court to consider. Accordingly, Plaintiffs' request for declaratory judgment must be denied.

Plaintiffs also seek injunctive relief barring Defendants from the "use [of] the Roberto Clemente mark, name and likeness, pursuant to Puerto Rico Joint Resolutions No. 16 and 17 of 2021 without just compensation." While Plaintiffs seek prospective relief, they have provided the Court with no basis from which it can infer any possibility of an ongoing violation of federal law. Moreover, the Plaintiffs' request for injunctive relief on the trademark violations has turned moot since the sale of license plates and license labels mandated by Joint Resolutions 16-2021 and 17-2021 expired by its own terms on December 31, 2022. The Plaintiffs have not made any allegations that the Commonwealth or individual Defendants continued the sales and alleged trademark infringement beyond the date of expiration, and that such specific conduct is capable of repetition. Therefore, the Court cannot provide meaningful relief, as there is no ongoing conduct left for the Court to enjoin. *See* U.S. Conf. of Cath. Bishops, 705 F.3d at 53. Accordingly, the Plaintiffs request for injunctive relief must also be denied.

Furthermore, as explained in more detail in the sections that follow, even if Plaintiffs were not barred from pursuing claims against the Commonwealth in federal court —which they are— and even if the claims where to survive prospective, injunctive relief

Civil No. 22-1373(GMM)
Page -36-

for alleged ongoing violations of federal law, specifically
trademark infringement, those claims fail because Plaintiffs have
not stated a viable trademark infringement claim pursuant to the
Lanham Act.

C.   Failure to State a Claim for Trademark Infringement pursuant
     to the Lanham Act

Plaintiffs allege that Defendants infringed on their
trademark under various provisions of the Lanham Act, 15 U.S.C. §§
1114 ("Section 32"), 1125(a) ("Section 43(a)") and 1125(c)
("Section 43(c)"). Specifically, Plaintiffs posit that "[t]hrough
the enactment and implementation of Joint Resolution No. 16,
Defendants incurred in an unauthorized use of the trademark, name
and likeness of Roberto Clemente in an identical product that the
one that was going to be sponsored by the trademark owners."
(Docket No. 27 at 12-13). They further allege that "[t]he Roberto
Clemente trademark, his right to publicity and likeness, the legacy
it represents and the trademarks, names and likeness of his sons
as individual businessmen and representatives of the mark are
severally damaged by the actions of the Defendants" and that "[t]he
actions of the Defendants have caused Plaintiffs losses of business
opportunities and revenues". Id. at 23. Also, that the "actions of
the Defendants constitute a gross misappropriation, discredit
dilution by blurring and by tarnishment and use in multiple ways
of the mark of Roberto Clemente, his right to publicity and

Civil No. 22-1373(GMM)
Page -37-

likeness in an illegal, negligent, culpable, willful and unauthorized manner. They also tarnished the Plaintiffs' trademarks, persons, names and their own likeness." Id. at 23-24.

As to the false advertising claim, Plaintiffs allege that the use of the Roberto Clemente mark in license plates and labels "constitutes false advertising because it implies that the funds would go to the Plaintiffs, owners of the Roberto Clemente mark. It is also a use of the mark." Id. at 11. They further posit that Defendants are "using the Roberto Clemente trademark as a subterfuge to collect money from the People." Id. In addition, they state that the use of the mark has encouraged contempt which has led to "innumerable attacks and disdains in the televised, written and on-line press, in social networks, in events, and during every day activities." Id.

    1. Each Lanham Act Claim Requires Proof of Use in Commerce and Commercial Use

"Trademark law seeks to prevent one seller from using the same 'mark' as —or one similar to— that used by another in such a way that. . .confuses the public about who really produced the goods (or service)." DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir. 1992). Liability under each Lanham Act claim expressly requires that a plaintiff establishes "use in commerce." Section 32 prohibits the unauthorized reproduction or use in commerce of registered trademarks, while Section 43(a) proscribes

the use in commerce of words or symbols that misidentify the source or affiliation of a product or service. As to the dilution claim, the Lanham Act expressly excludes dilution liability based on any noncommercial use of a mark. *See* 15 U.S.C. § 1125(c)(3)(C). Furthermore —separate and independent of the "use in commerce" element— each Lanham Act claim also requires, expressly or implicitly, that the allegedly infringing use be a "commercial use" of the plaintiff's mark.

More specifically, Section 32 prohibits, in relevant part, the unauthorized

> use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...

15 U.S.C. § 1114.

Likewise, Section 43(a) makes liable

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -- is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....

15 U.S.C. § 1125(a)(1)(A).

In addition, the Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, [or] qualities" of a product. 15 U.S.C. § 1125(a)(1)(B). Also, Section 43(c) provides, in pertinent part: "(3) Exclusions. The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:. . .(C) Any noncommercial use of a mark." 15 U.S.C. § 1125(c)(3)(C).

Federal trademark rights are created by actual "use" of the mark in commerce. Kusek v. Family Circle, Inc., 894 F.Supp. 522, 531 (D. Mass. 1995) (citing 15 U.S.C. § 1051). Concurrently,

> infringement of a federal trademark right is defined as the unauthorized 'use in commerce' of any reproduction, counterfeit, copy or colorable imitation of a registered mark on goods or services ... and/or 'use in commerce' of any word, term, or false designation of origin, false or misleading description of fact or false or misleading representation of fact, which is likely to cause confusion.

Id. (citing 15 U.S.C. §§ 1114(1)(a) and (b), 1125(a)). Hence, it is not just any use of a trademark that will subject a defendant to liability. Instead, these sections of the statute, which rely on the Commerce Clause as their constitutional basis, prohibit infringement only if a trademark is "use[d] in commerce" "in connection with" "goods or services." 15 U.S.C. §§ 1114(1)(a), 1125(a).

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade." Id. § 1127. This can occur when

the trademark is used on goods for sale, or "in the sale or advertising of services." Id. Furthermore, Sections 32 and 43(a) "do not even reach an unauthorized use unless it is 'in connection with any goods or services.'" Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 914 F. Supp. 651, 654 (D. Me. 1996), aff'd, 103 F.3d 196 (1st Cir. 1996) (*discussing* 15 U.S.C. §§ 1114(1)(a), (b), and 1125(a)).

Thus, a trademark infringement injury under the Lanham Act is limited to redressing acts that create consumer confusion:

> [A] trademark is not property in the ordinary sense but only a word or symbol indicating the origin of a commercial product. The owner of the mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. There are no rights in a trademark beyond these.

Natl. Licensing Assn. v. Inland Joseph Fruit Co., 361 F. Supp.2d 1244, 1255 (E.D. Wash. 2004) (*citing* Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457, 464 (3rd Cir. 1968) (emphasis added).

"[T]he Lanham Act was enacted to protect trademarks and service marks from use 'in commerce' by competitors in order to avoid confusion among consumers." Utah Republican Party v. Herbert, 141 F.Supp.3d 1195, 1204 (D. Utah 2015). "To invoke the protections of the Lanham Act, a plaintiff must show that the alleged infringer used the plaintiff's mark 'in connection with

any goods or services.'" Id. at 1205. "The Lanham Act is intended to protect the ability of consumers to distinguish among competing producers, not to prevent all unauthorized uses." Id. "Unless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked." Id. at 1204-1205. "[A] trademark, unlike a copyright or patent, is not a 'right in gross' that enables a holder to enjoin all reproductions." Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 35 (1st Cir.1989) (citing Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co., 703 F.2d 1372, 1374 (Fed. Cir. 1983)).

   2. Trademark Infringement under Section 32

      "[T]o succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008); see also Star Financial Services, Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996) (quoting DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 605 (1st Cir. 1992)). Nationwide Payment Sols., LLC v. Plunkett, Civil No. 2:09-600 (GZS), 2011 WL 446077, at *10 (D. Me. Feb. 3, 2011), report and recommendation adopted, 2011 WL 1045137 (D. Me. Mar. 16, 2011); Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 61 n.6 (1st Cir. 2008) (holding that claims under both 15 U.S.C. §§ 1114 and 1125(a) require plaintiff to allege use in

Civil No. 22-1373(GMM)
Page -42-

commerce of a trademark or marks that misidentify the affiliation
or source of a service, and likelihood of consumer confusion).

The Court finds the first prong has been satisfied by the
federal trademark registration that entitles Plaintiffs to the
trademark rights. Yet, the Court does not need to review the second
prong which focuses on the possibility that the allegedly
infringing use is likely to cause consumer confusion. Plaintiffs
have failed to allege how the Defendants have used their mark in
commerce "in connection with" "goods or services."

Mere, alleged, unauthorized use of a trademark is not enough
to establish standing for trademark infringement. Although
Plaintiffs allege Defendants engaged in unauthorized use of a
trademark of "an identical product that the one that was going to
be sponsored by the trademark owners," they have not alleged that
they actually provide the same "goods or services." Moreover, "just
as copyright law does not protect ideas but only their concrete
expression, neither does trade dress law protect an idea, a
concept, or a generalized type of appearance." Bonazoli v. R.S.V.P.
Int'l, Inc., 353 F. Supp. 2d 218, 229 (D.R.I. 2005) (citing Jeffrey
Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 32 (2d
Cir. 1995)). Also, the eight-factor confusion test generally
applied in the First Circuit is not applied to assess confusion in
the abstract; it is focused on the likelihood that commercially

Civil No. 22-1373(GMM)
Page -43-

relevant persons or entities will be confused. Astra
Pharmaceutical Prods., Inc. v. Beckman Instruments, 718 F.2d 1201,
1204-09 (1st Cir. 1983); Pignons S.A. de Mecanique v. Polaroid
Corp., 657 F.2d 482, 487-92 (1st Cir. 1981). Moreover, cases
analyzing the Lanham Act speak of confusion in terms of
"customers," "consumers," and "products" or "goods."

Here, the alleged "goods or services" in controversy are
license plates and vehicle certificate tags issued by the
Department of Transportation. Like many states, the Commonwealth
uses the vehicle license plate program not only to identify
vehicles but as a revenue source. "Automobile license plates are
governmental property intended primarily to serve a governmental
purpose, and inevitably they will be associated with the state
that issues them." Perry v. McDonald, 280 F.3d 159, 169 (2d Cir.
2001). Consequently, not only are these not the classes of products
or services that trademark law protects, but issuing motor vehicle
license plates and tags cannot be considered commercial use, as it
is a clear government activity. See Walker v. Texas Div., Sons of
Confederate Veterans, Inc., 576 U.S. 200 (2015).

Moreover, as described in the Amended Complaint, the license
plate and tags in controversy depict the figure of Roberto Clemente
in the context of the fiftieth anniversary of his 3,000[th] hit. This
was an event of historical significance for both, Puerto Rico and
Major League Baseball, and thus the significance of its

Civil No. 22-1373(GMM)
Page -44-

memorialization cannot be understated. Courts have recognized the public value of information about the game of baseball and its players, referring to baseball as "the national pastime." *See* Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959, 972 (10th Cir.1996). To that extent it must be noted that:

> Major league baseball is followed by millions of people across this country on a daily basis. . .The public has an enduring fascination in the records set by former players and in memorable moments from previous games. . .The records and statistics remain of interest to the public because they provide context that allows fans to better appreciate (or deprecate) today's performances.

C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P., 505 F.3d 818, 823 (8th Cir. 2007) (*quoting* Gionfriddo v. Major League Baseball, 94 Cal.App.4th 400, 411, 114 Cal.Rptr.2d 307 (2001)).

In the end, the issue is whether the Commonwealth, through Joint Resolutions No. 16 and 17 of 2021 and Act 67-2022, provides a "good or service" in commerce that infringes on the Plaintiffs trademark. The Plaintiffs have not made a plausible allegation that the Commonwealth or Defendants did so, and their claim is thus unsuccessful because Plaintiffs failed to state an essential element of their trademark infringement cause of action. Accordingly, Plaintiffs lack standing and have failed to state a redressable claim under Section 32.

Civil No. 22-1373(GMM)
Page -45-

3. <u>False Advertising Under the Lanham Act</u>

Plaintiffs allege that Defendants are liable for false advertising in violation of Section 43 of the Lanham Act.

Section 43(a) creates two distinct bases of liability: false association and false advertising. *See* <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 122 (2014). The Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, [or] qualities" of a product. 15 U.S.C. § 1125(a)(1)(B).

False advertising claims focus on whether a defendant has made some false statement in advertising about the product that fundamentally misrepresents its qualities. A false association claim under subsection A, on the other hand, serves as the functional equivalent of a traditional trademark infringement claim for unregistered marks and trade dress. *See* <u>1-800 Contacts, Inc. v. Lens.Com, Inc.</u>, 722 F.3d 1229, 1238 (10th Cir. 2013). That is, the focus of the claim is on whether the mark causes confusion by leading consumers to think that two products from different sources are from the same source. "Claims brought under this section are traditionally referred to as 'false sponsorship' or 'false endorsement' claims and are traditionally limited to celebrity plaintiffs." <u>Ji v. Bose Corp</u>., 538 F. Supp. 2d 349, 351 (D. Mass. 2008) (*citing* <u>Parks v. LaFace Records</u>, 329 F.3d 437 (6th Cir. 2003)).

To state a claim for false advertising, a plaintiff must prove that "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002). Moreover, to qualify as a "commercial advertisement," for purposes of a Lanham Act false advertising claim, a representation must (1) constitute commercial speech; (2) made with the intent of influencing potential customers to purchase the speaker's goods or services; (3) made by a speaker who is a competitor of the plaintiff in some line of trade or commerce; and (4) disseminated to the consuming public in such a way as to constitute "advertising" or "promotion." See Genzyme Corp. v. Shire Human Genetic Therapies, Inc., 906 F.Supp.2d 9 (D. Mass. 2012).

Based on the foregoing, Plaintiffs' claims under Section 43(a) equally fail as a matter of law.

Civil No. 22-1373(GMM)
Page -47-

First, Plaintiffs lack standing to sue the Commonwealth and Defendants under this section of the Lanham Act. In Lexmark, the Supreme Court provided the framework for determining whether a plaintiff has standing to raise a claim under Section 43(a). The Supreme Court held that that a plaintiff invoking Section 43(a) must show that his claim falls within the "zone of interests" protected by that statute and that his injury was proximately caused by the alleged violation. In this case, the Amended Complaint fails to plead, much less meet, the proximate cause requirement established in Lexmark.

The Court in Lexmark held "that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flows directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Lexmark Int'l, Inc., 572 U.S. at 133. Here, however, not only is there is no allegation, or even a suggestion, by Plaintiffs in their Amended Complaint, that the Commonwealth or Defendants' use of the Roberto Clemente trademark caused "consumers" to withhold trade from them, but as with their Section 32 claim, they again fail to allege "use in commerce" and "in connection with goods or services."

Moreover, as a false advertising claim, Plaintiffs' cause is plainly insufficient. They fail to plead the elements of "commercial advertisement" and "commercial speech" as required to

state claim for false advertising under Lanham Act. Not only are
the license plates and tags not considered "goods or services"
under the statute, but they also cannot be considered
advertisements, and Plaintiffs have not even alleged as much.
Furthermore —and pertinent to this case— we must point out what
other courts have held in similar false advertising claims. In
Pirone v. MacMillan, Inc., 894 F.2d 579 (2nd Cir. 1990), the Second
Circuit rejected a trademark claim asserted by the daughters of
baseball legend Babe Ruth. There, plaintiffs objected to the use
of Ruth's likeness in three photographs which appeared in a
calendar published by the defendant. The court rejected their
claim, holding that "a photograph of a human being, unlike a
portrait of a fanciful cartoon character, is not inherently
'distinctive' in the trademark sense of tending to indicate
origin." Id. at 583. The court noted that Ruth "was one of the
most photographed men of his generation, a larger than life hero
to millions and an historical figure in whom interest still runs
high." Id.; ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 922 (6th
Cir. 2003) ("[A]s a general rule, a person's image or likeness
cannot function as a trademark.") The Second Circuit Court
concluded that a consumer could not reasonably believe that Ruth
sponsored the calendar:

> [A]n ordinarily prudent purchaser would have no
> difficulty discerning that these photos are merely the
> subject matter of the calendar and do not in any way

Civil No. 22-1373(GMM)
Page -49-

> indicate sponsorship. No reasonable jury could find a
> likelihood of confusion.

Id. at 923. Certainly, the same can be applied here to the alleged
facts regarding the use of the image of Roberto Clemente.

In addition, Plaintiffs have not pled that Defendants made
any false or misleading statement beyond the use of the mark. The
only allegations related to any sort of false or misleading
statement are the bold conclusory assertions that Defendants' use
of the Roberto Clemente mark in the license plates and labels
"constitutes false advertising because it implies that the funds
would go to the Plaintiffs, owners of the Roberto Clemente mark"
and that they are "using the Roberto Clemente trademark as a
subterfuge to collect money from the People." Furthermore,
Plaintiffs allegations of harm from the alleged violation of the
statute are conclusory statements of unspecified injury and of the
type that was not intended to be protected by the Lanham Act.

Second, Plaintiffs' Lanham Act claim falls short of the
factual detail needed to plead plausibility as required by Iqbal
and Twombly. A review of the Amended Complaint reflects a
conclusory and formulaic recitation of certain elements of a
trademark infringement cause of action that is insufficient to
survive a motion to dismiss. Far from pleading facts showing a
plausible cause of action, Plaintiffs simply parrot certain
statutory language tied with facts that do not amount to a valid

statutory claim. Likewise, as explained above with respect to Plaintiffs' failure to plead damages meeting the proximate cause requirement for actions under Section 43(a) set forth in <u>Lexmark</u>, Plaintiffs' damages allegations —stating no more than that they have been harmed from the alleged violation of the statute— come nowhere close to meeting the <u>Iqbal</u> and <u>Twombly</u> plausibility requirement. Plaintiffs' failure to sufficiently plead damages is thus an independent basis on which to dismiss Plaintiffs' Lanham Act claims.

There is no need for the Court to further analyze Plaintiffs' dilution claim, as it also fails on the same grounds as the other two Lanham Act claims.

D.   <u>Takings Clause of the Fifth Amendment in the United States Constitution</u>

Additionally, the Plaintiffs allege that Defendants' actions constituted a taking under the Constitution.

The Takings Clause of the Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. Amend. V. "[A] government violates the Takings Clause when it takes property without compensation, and. . .a property owner may bring a Fifth Amendment claim under § 1983 at that time." <u>Knick v. Twp. of Scott, Pennsylvania</u>, 139 S. Ct. 2162, 2177, 204 L.Ed.2d 558 (2019).

The classic taking which requires just compensation is the physical appropriation of real or personal private property by the government.  For much of the Nation's history, the Takings Clause was thought only to embrace such physical takings and not to apply to the regulation of property.  *See* Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005). However, in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922) the United States Supreme Court recognized that the regulation of private property may be considered a taking if the regulation "goes too far." *See also* Lingle, 544 U.S. at 538. The Supreme Court has identified three factors which are helpful in analyzing a regulatory taking: (1) the economic impact of the regulation on the property owner; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government regulation.  *See* Lingle, 544 U.S. at 539.

A question raised by the motions before the Court is whether a trademark is the type of private property protected by the Takings Clause. The question is debatable and far from settled. *See* Dustin Marlan, Trademark Takings: Trademarks As Constitutional Property Under the Fifth Amendment Takings Clause, 15 U. Pa. J. Const. L. 1581, 1583 (2013). The Supreme Court has recognized other intangible property as protected by the Takings Clause. *See* Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1004 (1984) (holding an intangible property interest in trade secrets is a right protected

by the Taking Clause of the Fifth Amendment); College Savings Bank, 527 U.S. at 673 (noting that "the Lanham Act may well contain provisions that protect constitutionally cognizable property interests. . ."); *but see* In re Int'l Flavors & Fragrances, Inc., 183 F.3d 1361, 1366 (Fed. Cir. 1999) (noting that "[t]he federal registration of a trademark does not create an exclusive property right in the mark.").

Plaintiffs claim damages, injunctive relief, and just compensation pursuant to Section 1983, alleging that Defendants "knowingly, intentionally and in bad faith misappropriated and used a trademark and likeness belonging to Plaintiffs for the purpose of obtaining the monies of the People of Puerto Rico." (Docket No. 27 at 33). The Commonwealth and Defendants claim that Eleventh Amendment immunity also bars the Plaintiffs' takings claim.

The Supreme Court has not addressed whether Eleventh Amendment immunity applies to takings claims against states or territories. Yet, some parties have argued that the recent decision in Knick created an exception to the sovereign immunity doctrine for Takings Clause claims. However, "[t]he takings claim in Knick was brought against a municipality, not the state, and for that reason the Supreme Court did not address sovereign immunity." Soscia Holdings, LLC v. Rhode Island, No. 22-CV-266-LM, 2023 WL 4230720, at *7 (D.R.I. June 15, 2023); *See also* Pharm. Research &

<u>Mfrs. of Am. v. Williams</u>, 64 F.4th 932, 949 n.13 (8th Cir. 2023) ("Knick did not address sovereign immunity, as it involved a suit against a town."); <u>Skatemore, Inc. v. Whitmer</u>, 40 F.4th 727, 734 (6th Cir. 2022)("[n]othing in Knick alters. . .bedrock principles of sovereign immunity law."); <u>Zito v. N.C. Coastal Resources Comm'n</u>, 8 F.4th 281, 286 (4th Cir. 2021)("Thus, every circuit to address *Knick*'s effect on sovereign immunity has concluded that *Knick* did not abrogate State sovereign immunity in federal court."); <u>Ladd v. Marchbanks</u>, 971 F.3d 574, 579-80 (6th Cir. 2020); <u>Bay Point Props. v. Miss. Transp. Comm'n</u>, 937 F.3d 454, 456-57 (5th Cir. 2019) ("Nor does anything in *Knick* even suggest, let alone require, reconsideration of longstanding sovereign immunity principles protecting states from suit in federal court."); <u>William v. Utah Dep't of Corr.</u>, 928 F.3d 1209, 1214 (10th Cir. 2019) ("But *Knick* did not involve Eleventh Amendment immunity, which is the basis of our holding in this case. Therefore, we hold that the takings claim against the [Utah Department of Corrections] must be dismissed based on Eleventh Amendment immunity. . .").

This District has followed the same reasoning in <u>Puma Energy Caribe LLC v. Puerto Rico</u>, Civil No. 20-1591 (DRD), 2021 WL 4314234, at *1 (D.P.R. Sept. 22, 2021):

> The Court fails to see how *Knick*-which involves a Municipality, instead of a state or a state official, and essentially addresses the state forum exhaustion of just compensation claims for government takings under state law- would aid them in their quest as it does not

Civil No. 22-1373(GMM)
Page -54-

discuss Eleventh Amendment immunity nor its interplay with the self-executing just compensation clause of the Fifth Amendment. Therefore, this Court must apply the law as it stands.

Furthermore, the Court in <u>Puma Energy</u> —founded on settled Section 1983 caselaw— concluded that plaintiffs could not pursue their Fifth Amendment claim under Section 1983 since it did not apply when suing the Commonwealth or its officers in their official capacities for monetary relief and the Eleventh Amendment equally barred their request for monetary relief. *See* <u>Id.</u> at *1 n.3 (*citing* <u>Fredyma v. Com. of Mass.</u>, 961 F.2d 1565 (1st Cir. 1992)) ("Neither states, nor state officials acting in their official capacity, or government entities that are 'arms of the State' are 'persons' under § 1983 for Eleventh Amendment purposes; they cannot be sued for monetary damages."); <u>Toledo v. Sanchez</u>, 454 F.3d 24, 31 (1st Cir. 2006); <u>O'Neill v. Baker</u>, 210 F.3d 41, 47 (1st Cir. 2000); <u>Caraballo v. Commonwealth of P.R.</u>, 990 F.Supp.2d 165, 172-174 (D.P.R. 2014) (Dominguez, J.)).

Though the First Circuit has not dwelled on this thorny subject, the consensus among most federal courts of appeals is to allow state governments to mount sovereign immunity defenses as to takings claims. *See* <u>Hutto v. S.C. Ret. Sys.</u>, 773 F.3d 536, 551-52 (4th Cir. 2014); <u>DLX, Inc. v. Kentucky</u>, 381 F.3d 511, 528 (6th Cir. 2004); <u>Garrett v. Illinois</u>, 612 F.2d 1038, 1040 n.1 (7th Cir. 1980); <u>Jachetta v. United States</u>, 653 F.3d 898, 912 (9th Cir.

2011); <u>Robinson v. Georgia Department of Transportation</u>, 966 F.2d 637, 640 (11th Cir. 1992).

Therefore, even though Plaintiffs argue that the Eleventh Amendment Immunity does not apply and that there is no local remedy to redress their takings claim, the Court must conclude that their claim under the Takings Clause is equally barred by the sovereign immunity doctrine, for the same reasons discussed in section B of this Opinion. Also, as discussed before, <u>Ex Parte Young</u> bars recovery of monetary damages. Plaintiffs' request for injunctive relief equally fails as to their takings claim.

Even if this Court assumes —for the sake of argument— that trademarks are constitutionally protected property and that the sovereign immunity doctrine does not apply, Plaintiffs' Takings Clause claims are still unsupported. Plaintiffs contend that the alleged trademark infringement promoted by Puerto Rico Joint Resolutions No. 16 and 17 of 2021 and Act 67-2022 constitute a taking of their trademark.

The latter contention is easily dismissed. A regulation may be a categorical or per se regulatory taking when government causes a property owner to "suffer a permanent physical invasion of [t]he[i]r property" or a regulation completely deprives a property owner of "all economically beneficial use of her property." <u>Lingle</u>, 544 U.S. at 538. However, as per the allegations in the Amended Complaint, neither Puerto Rico Joint Resolutions No. 16

Civil No. 22-1373(GMM)
Page -56-

and 17 of 2021 nor Act 67-2022 seem to deprive Plaintiffs of any
use of their trademarks, much less "all economically beneficial
use" of the property. Plaintiffs remain free to use their
trademarks as they wish.

E.   <u>Due Process Clause of the Fifth and Fourteenth Amendment</u>

Plaintiffs also allege that the Defendants are "using and
pretend to continue using Plaintiffs property, the Roberto
Clemente mark, without due process of law." (Docket No. 27 at 34).
They add that those actions "constitute a substantive due process
violation" because it is "a governmental scheme designed to
misappropriate a trademark and also the products, goods and
services of the mark [and that it] shocks the conscience and must
stop." (Docket No. 27 at 35).

The Fourteenth Amendment to the United States Constitution
prohibits a state from depriving any person of "life, liberty, or
property, without due process of law." U.S. Const. amend. XIV, §
1. "The touchstone of this due process guarantee is the protection
of the individual against arbitrary action of government."
<u>DePoutot v. Raffaelly</u>, 424 F.3d 112, 117 (1st Cir. 2005) (internal
quotation marks omitted). The substantive due process guarantee
"safeguards individuals against certain offensive government
action, notwithstanding that facially fair procedures are used to
implement them." <u>Id.</u> The Due Process Clause applies to Puerto Rico.

Civil No. 22-1373(GMM)
Page -57-

*See* Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico, 478 U.S. 328 (1986).

To set out a substantive due process claim, a plaintiff challenging specific acts of government officials must sufficiently allege that: (1) the officials' "acts were so egregious as to shock the [contemporary] conscience"; and (2) that the acts "deprived [them] of a protected interest in life, liberty, or property." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006); Abdisamad v. City of Lewiston, 960 F.3d 56, 59-60 (1st Cir. 2020) (holding that a substantive due process claim must allege facts "so extreme and egregious as to shock the contemporary conscience."); *see also* DePoutot, 424 F.3d at 118. The question whether "the challenged conduct shocks the contemporary conscience is a threshold matter that must be resolved before a constitutional right to be free from such conduct can be recognized." DePoutot, 424 F.3d at 118. To meet that standard, the officers' conduct must be "truly outrageous, uncivilized, and intolerable." Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011).

The First Circuit has depicted certain guidelines to direct the analysis of conduct's egregiousness. *See* Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880-81 (1st Cir. 2010). On one hand, "negligence, without more, is simply insufficient to meet the conscience-shocking standard." Id. at 881 (internal quotation marks omitted). On the other, allegations that state officials had

"an intent to injure in some way unjustifiable by any government interest is likely sufficient" to meet the conscience-shocking threshold. Id. (internal quotation marks and brackets omitted). Between these two lines are cases that present "closer calls." Id. Ultimately, though, the shocks-the-conscience threshold is necessarily a "high one," to prevent the Constitution from being demoted to a "font of tort law." Drake v. Town of New Bos., No. 16-CV-470-SM, 2017 WL 2455045, at *13 (D.N.H. June 6, 2017) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

The First Circuit has collected representative cases in which plaintiffs established a viable substantive due process claim. See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000); Harrington v. Almy, 977 F.2d 37, 44 (1st Cir. 1992); see also Ortolano v. City of Nashua, No. 22-CV-326-LM, 2023 WL 4237366, at *5 (D.N.H. June 28, 2023); Spencer v. Doran, No. 18-CV-1191-LM, 2020 WL 4904826, at *5 (D.N.H. Aug. 20, 2020) (quoting Cummings v. McIntire, 271 F.3d 341, 346 (1st Cir. 2001)). Yet, here, none of the allegations against the Defendants come remotely close to establishing a claim for a violation of Plaintiffs' substantive due process rights. Their allegations not only fall short of complying with the Iqbal and Twombly pleading standards, but they pay scant notice to the guidelines outlined by the First Circuit. Therefore, the allegations in Plaintiffs' Amended Complaint are

insufficient to state a claim for relief under a theory of substantive due process.

F.   Defendants in their individual capacity

>    The individual liability standard [under the Lanham Act]
>    does not ask whether the individual participated or
>    engaged in some infringing act; instead, it asks whether
>    he actively participated as a moving force in the
>    decision to engage in the infringing acts, or otherwise
>    caused the infringement as a whole to occur.

Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1478 n.8 (11th Cir. 1991). Under this standard, a "corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity" is personally liable. *See* Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1184 (11th Cir. 1994).

It is not clear from current caselaw that the Lanham Act's individual liability disposition also applies to state officers in their individual capacity. Regardless, "[a]s a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." Hafer v. Melo, 502 U.S. 21, 25 (1991); *see also* Papasan v. Allain, 478 U.S. 265, 277 n.11 (1986). Thus, a suit for monetary damages may be prosecuted against a state officer in his or her individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself or herself, so long as the

relief is sought not from the state treasury but from the officer personally. Hafer, 502 U.S. at 31.

Yet, as previously discussed in section C, Plaintiffs have failed to adequately plead a claim pursuant to the Lanham Act. On motion to dismiss, the Court "need not credit a complaint's bald assertions or legal conclusions." Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996). Moreover, the Amended Complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) This reasoning is equally applicable to determining individual liability against Governor Pierluisi or the other individual Defendants. Plaintiffs' Lanham Act claims should thus also be dismissed against Defendants in their personal capacity because they have failed to allege the essential elements of such a claim.

Likewise, the Court has determined that Plaintiffs' Amended Complaint contains insufficient allegations to establish plausible entitlement to relief for any constitutional violations. These allegations are equally lacking to hold Defendants liable in their individual capacities. Here, Plaintiffs fail to allege any facts which demonstrate wrongdoing by the individual Defendants. The mere fact that they have enforced the resolution and statute in controversy is irrelevant in the absence of allegations that their

actions were motivated by some improper purpose or acting outside the scope of their official duties. In other words, Plaintiffs' averments fall woefully short of the "special showing" requirement. Plaintiffs' conclusory statements, standing alone, run afoul of their obligation to outline a claim with sufficient supporting facts.

### 1. Qualified Immunity

To protect officials from unnecessary litigation burdens, the Supreme Court and First Circuit have often emphasized the importance of addressing issues of qualified immunity "at the earliest possible stage in litigation." Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011) (*quoting* Hunter v. Bryant, 502 U.S. 224, 227 (1991)); *See, e.g.*, Est. of Rahim by Rahim v. Doe, 51 F.4th 402, 411 (1st Cir. 2022) (concluding it was an error for the district court to find "that consideration of the 'clearly established' prong of the qualified immunity defense was premature before discovery."). Thus, although additional factual development may be beneficial to this Court's analysis, the Court addresses Defendants' qualified immunity claims at this stage.

"When government officials are sued in their individual capacities for money damages, the doctrine of qualified immunity shields them from pecuniary liability unless their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lawless v. Town

of Freetown, 63 F.4th 61, 67 (1st Cir. 2023) (*quoting* Pearson v.
Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565
(2009)). Officials are shielded by qualified immunity to permit
them to fulfill their professional responsibilities without
hesitation born of the fear of liability. Anderson v. Creighton,
483 U.S. 635, 638 (1987).

Qualified immunity applies where: (1) a federal right was
violated, and (2) "the unlawfulness of the conduct was clearly
established at the time." Lawless, 63 F.4th at 67. Courts may begin
the qualified immunity analysis by considering the clearly
established prong. *See* Id.

To determine whether the allegedly violated rights were
clearly established, the Court must decide the following: "(1) the
relative clarity of the governing law to a reasonable official on
the date of the alleged wrong and (2) whether the specific
characteristics of the situation confronted by the official would
have made it clear to a reasonable official how the governing law
applied in the given situation." Id. The governing law must be so
clear as to put "the statutory or constitutional question beyond
debate" because officials may "make reasonable but mistaken
judgments." City & Cnty. of San Francisco v. Sheehan, 575 U.S.
600, 611 (2015). Qualified immunity protects "all but the plainly
incompetent or those who knowingly violate the law." Id. (*quoting*
Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d

1149 (2011)). The plaintiff bears the burden to demonstrate that the law was clearly established. Est. of Rahim by Rahim, 51 F.4th at 410.

To avoid qualified immunity in the context of their constitutional claims, Plaintiffs must identify controlling authority or a consensus of persuasive cases that provide a clear signal that the challenged conduct violates a constitutional right. See Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017).

Here, Plaintiffs have failed to provide clearly established law that enforcing the Puerto Rico Joint Resolutions No. 16 and 17 of 2021 and Act 67-2022, in the circumstances of this case, would violate their federal constitutional rights. On the contrary, as discussed before, it is clear that Plaintiffs' allegations do not plausibly establish a claim under the Lanham Act, the Takings Clause, the Due Process Clause, or any other statute cited in their Amended Complaint. Moreover, here, Governor Pierluisi as well as the other individual Defendants were merely complying with their official duties to enforce a law as adopted by the legislature. As per the caselaw and other applicable law to date, any reasonable public official in their situation could have concluded that no trademark or proprietary rights were being violated by the imposition of the license fees that Plaintiffs have challenged in this case.

Civil No. 22-1373(GMM)
Page -64-

G.    Failure to State a Claim Against the Authority

Pending before the Court is also the Authority's Motion to Dismiss. The Authority contends that Plaintiffs' Amended Complaint must be dismissed against them since it fails to state a plausible claim for relief.

"Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d at 305 (quoting Centro Médico del Turabo, Inc., 406 F.3d at 6) (internal quotations omitted).  At the start, "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. See Litton Indus., Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1978). Then, the court must determine whether the well-pleaded facts, taken in their entirety, permit "the reasonable inference that the defendant is liable for the misconduct alleged." Morales-Cruz, 676 F.3d at 224. The Court is not obligated to accept a plaintiff's "bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

In addition, an action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *See* Neitzke, 490 U.S. at 327-28.

It is with this progression in mind that we turn to Plaintiffs' declaratory array against the Authority.

Plaintiffs intend to bring a claim for damages and injunctive relief against the Authority pursuant to the Lanham Act and the Takings Clause. Yet, the allegations as to the Authority are limited to a recital of the dispositions included in Act 67-2022 which refer to the public corporation as the entity designated by that statute as "responsible for the planning and organization of the Roberto Clemente Sports District, which includes the development, reconstruction and construction of facilities for its proper functioning" and as the recipient of public funds to execute those responsibilities. (Docket No. 27 at 8, 16, 18, 20 and 22).

As to the trademark infringement claim, Plaintiffs allege that the Authority has illegally used the Roberto Clemente mark, by its mere inclusion or mention in the dispositions of Act 67-2022. Yet, the Amended Complaint is void of allegations as to how

Civil No. 22-1373(GMM)
Page -66-

the Authority has used the trademark in violation to the Lanham

Act. The only allegations that refer to the alleged trademark

infringement generally read as follows:

> Therefore, Puerto Rico Convention District Authority is
> directly responsible for the creation and the further
> development and administration of the Roberto Clemente
> Sports District which is an unauthorized use of the
> Roberto Clemente trademark and name, and is an imitation
> of Ciudad Deportiva Roberto Clemente which is one of the
> most valuable and recognizable endeavors backed by the
> Roberto Clemente trademark, making the infringement even
> more blatant.

> Defendants in their individual capacities and the Puerto
> Rico Convention District Authority acting under color of
> state law, illegally, culpably, negligently,
> intentionally, knowingly and willfully, used, are using
> and pretend to continue using the Roberto Clemente mark,
> name and likeness in contravention to the aforementioned
> legal provisions.

Moreover, Plaintiffs failed to allege how the Authority has

used their mark in commerce "in connection with" "goods or

services." As stated before, mere, alleged, unauthorized use of a

trademark is not enough to establish standing for a trademark

infringement claim. Plaintiffs simply fail to plead any of the

necessary elements of a Lanham Act violation. The plausibility

standard requires more than a possibility that the Authority has

acted unlawfully. Their Amended complaint falls short of the

factual detail needed to plead plausibility as to the Lanham Act

claim as required by <u>Iqbal</u> and <u>Twombly.</u>

Regarding the Takings Clause claim, Plaintiffs merely allege

that "Defendants in their individual capacity and the Puerto Rico

Civil No. 22-1373(GMM)
Page -67-

Convention District Authority, are compelled to redress the damages for the violation of the Plaintiffs' right to not be deprived of property without just compensation." (Docket No. 27 at 34). This allegation is only backed by the series of assertions that just parrot the dispositions of Act 67-2022, which again, mention the Authority only to designate it as the entity responsible for implementing part of the public policy established in said statute.

Furthermore, Plaintiffs make the following blank assertion that is far from establishing a valid claim under the Takings Clause:

> The Puerto Rico Convention District Authority also endorsed H.R. 489 and indicated that it was in a unique position for the development of the Sports District, which goes hand in hand with the Convention District, as it is an opportunity to allow them to be the entity that develops the administration of the projects carried out in the Sports District. Recommended that the Authority be responsible for the planning and organization of the Sports District, maximizing its potential.

As the Authority posits, its involvement with Act 67-2022 is imposed by the statute and its participation in the legislative process cannot amount to liability under the Takings Clause. Also, there is no plausible allegation that the Authority has caused any breach, violation, damage, or unlawful use of Plaintiffs' property. The combined allegations, taken as true, simply do not state a plausible case for relief.

Civil No. 22-1373(GMM)
Page -68-

It is true that the pleadings need not contain detailed factual allegations. But, they must provide more than labels and conclusions. Naked assertions and mere conclusory statements are insufficient to survive dismissal. The claims against the Authority lack an arguable basis in fact and law and the Amended Complaint fails to state a claim on which relief can be granted.

H.   Claims regarding the Puerto Rico Laws

This Court has supplemental jurisdiction to hear state law claims when it has original jurisdiction over the action and the claims "form part of the same case or controversy." 28 U.S.C. § 1367(a). However, where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Jesus v. Town of Pembroke, NH, 977 F.3d 93, 114 (1st Cir. 2020) ("We have held that a district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction, and absent certain circumstances inapplicable here, doing so is not an abuse of discretion."). Moreover, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state

Civil No. 22-1373(GMM)
Page -69-

claims may be dismissed without prejudice and left for resolution to state tribunals." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27 (1966). Here, the balance of factors favors declining the exercise of supplemental jurisdiction and, therefore, the Court hereby **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law claims.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the motions to dismiss at Docket Nos. 36, 38 and 42 and Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. In addition, Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**. Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 22, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE